STEEL v. MILLER ET AL.

1. **Contract**: MUTUAL ASSENT. Where it appeared from the evidence that the parties to an agreement did not both assent to the entire contract, but that the assent of one was limited to a part, it was *held* that the contract could not be enforced.

2. **Deed**: DELIVERY. The question of the delivery of a deed is always one of intention of the parties; that an instrument of conveyance passed from the hands of the owner to the party named therein as grantee, without the intent of the former to convey, does not constitute delivery.

3. **Practice in the Supreme Court**: SUPPRESSION OF DEPOSITION. In the absence of a showing that a motion to suppress a deposition was made at the proper time, the motion will be presumed to have been properly overruled.

*Appeal from Mahaska District Court.*

FRIDAY, APRIL 23.

ACTION in chancery. The petition was filed February 22d, 1871, in the District Court of Monroe county, and charges that two of the defendants hold certain deeds and a mortgage, executed by plaintiff upon certain lands owned by her, the mortgage covering her homestead; that the conveyances were executed to certain of the defendants, as trustees for the benefit of persons claiming to hold her husband liable on account of

Steel v. Miller.

moneys deposited by them in a bank which had failed, and of which he was the cashier; that the deeds and mortgage were executed for the purpose of releasing her husband from arrest, and prosecution upon certain criminal charges made against him by certain of defendants, or by those for whom they acted, and upon an agreement to that effect which contained other stipulations; that the instruments were left by her in the hands of one of her attorneys, to be delivered only upon the performance by defendants of the agreement aforesaid, or rather upon such agreement being embodied in writing, and the defendants thus becoming bound to perform it, and that defendants did not so stipulate in writing, and the instruments were never delivered, but the possession thereof having been fraudulently obtained by two of the defendants, they are held for the purpose of beclouding her title. She prays that defendants be restrained from using the instruments, and that upon a final hearing a decree be rendered cancelling, and declaring them null and void.

The answers of the defendants, after admitting the execution of the instruments, deny the other allegations of the petition, and allege that the deeds and mortgage were duly delivered, and that no such terms as stated above constituted a part of the agreement under which the instruments were to be delivered.

The creditors for whose benefit the deeds are alleged to have been executed and delivered, intervened and Trimble & Hammond and Perry & Townsend, to whom two mortgages were severally executed after the transactions above stated, also intervened and claimed the enforcement by foreclosure of these liens.

The venue of the cause was changed to Mahaska county. Upon the final hearing the relief prayed for by plaintiff was granted, and a decree was entered, cancelling and declaring null and void the deeds and mortgage. The mortgages of the intervenors were foreclosed by proper decrees.

The original defendants to the action, and the intervening *cestui que trusts*, for whose benefi' instruments in question are alleged to have been exec ..., appeal.

*Stuart Bros., Yocum & Robb*, for appellant.

*Perry & Townsend, H. H. Trimble* and *W. P. Hammond*, for appellees.

BECK, J.—The decision of this case turns solely upon the facts. We think no disputed question of law is involved in it.

The main questions of fact upon which the case must be determined are but two, viz:

1. Was there a valid agreement entered into by the parties, whereby plaintiff becomes bound to convey the property described in the deeds and mortgage?

2. Were these instruments delivered to the defendants?

I. The record in this case is voluminous, and the evidence especially is unusually prolix. It is found in the depositions of twenty-five witnesses. These give their testimony usually at great length, and a multitude of facts and circumstances are rehearsed which the parties supposed had a bearing on the case. Many of them, however, have but a remote relevancy to the main issue, and many others none at all, while there are a great number that are directly pertinent. It is quite impossible in an opinion of reasonable length to discuss these facts, in order to support the conclusion reached by us; neither would such a discussion be profitable to the parties or the profession. Were we to follow the course presented by counsel and marked out in the evidence, we would be lead into a profitless rehearsal of the prior conditions of the parties, the fraudulent acts and practices of plaintiff's husband, the violence and unlawful acts threatened and done by the defendants, etc., etc., all transpiring in connection with the property and transactions in controversy. While these have more or less bearing upon the case, space in our reports cannot be given them. We will content ourselves with a statement of our conclusions without an attempt to discuss the evidence.

The title of the property in controversy was in plaintiff, whose husband was under arrest for transactions growing out of his connection with a bank, which, six or eight months before, had failed. The creditors of the bank were endeavor-

ing to coerce him into a settlement, or, to state the fact more mildly, to induce him to settle their claims, insisting that he had the means of the bank in his hands. There can be no doubt that his arrest and detention in custody, if not made for the purpose of effecting such settlement, was taken advantage of by the creditors for that purpose. Terms of settlement were made and talked over, which required plaintiff to convey the property described in the deeds and execute a mortgage upon her homestead. It had gone so far that the parties, supposing they well understood each other, caused the proper conveyances and writings to be drawn up, which are those that are assailed in this action and two others, a bond executed by the husband and his son and a release signed by the creditors of the bank, discharging him from liability after the creditors had received the securities contemplated.

The release is signed only by or for the creditors, and purports to give the terms of the settlement. Plaintiff did not sign it, nor does it appear that it was intended that she should. Now, the question is this: does this agreement of settlement, witnessed by those papers, bind plaintiff? Without making any other point, we are satisfied it does not, for the simple reason that she never assented to it, and it does not contain terms and conditions upon which she agreed to the arrangement. It will be remembered that the release and bond which contain the written terms of the settlement were not signed by plaintiff, and it is not pretended that they were embodied in any other writing.

We are well satisfied that plaintiff assented to make the conveyances only on condition that her husband should be dis-

1. CONTRACT: charged from criminal prosecutions. This was
mutual
assent. not stipulated in the writings, and defendants deny any such agreement, and aver that she assented to the terms found in the release and bond. If plaintiff assented to the arrangement on this condition, and defendants refuse to recognize it, then, obviously, there was no agreement, no contract in which the parties' minds met in accord. The evidence of plaintiff, and other witnesses, supports her position, while there are many, more in number than those supporting plaintiff, who

state facts tending to prove that she did assent to the terms. But we are convinced that upon this point plaintiff has the preponderance of the proof. The evidence on her side is positive and direct, while that of the other is mainly, if not exclusively, of acts and declarations of plaintiff and her counsel. These may not have been correctly understood by the witnesses, or may have been made in a misunderstanding of the condition of the settlement, or even of the effect of the paper signed by the creditors. Certain it is, that there is upon that point a conflict of evidence which may be reconciled upon the theory that each party misunderstood the stipulations the other was to perform. There are facts that lead us to the conclusion that the defendants, or a part of them, understood plaintiff to demand the condition of her husband's release, and did not assent to the arrangement, because it was not recognized by the other party. But, without further discussion, we may state that we reach the conclusion that plaintiff did not assent to the settlement as it is expressed in the papers referred to. The fact that the agreement to discharge her husband was in conflict with law, and could not be enforced, does not affect our conclusion. If plaintiff assented only to that condition, which defendants refused to allow, it is very plain that the minds of the parties did not come to an agreement. Her assent to the whole agreement, taken together as she understood it, cannot be applied to a part, excluding terms which she understood were admitted.

II. Upon the other branch of the case, involving the question of the delivery of the deeds and mortgages, we reach the conclusion that the preponderance of evidence is with the plaintiff.

That the instruments passed out of the hands of plaintiff's attorney, who held them, and were received by the attorneys of the other party, is quite true. But we conclude that in this act there was no intention to deliver them to the grantees. The question of delivery is always one of intention of the parties. If the deed passes into the hands of the grantee without intention on the part of the

2. DEED:
delivery.

grantor that it shall become operative and be used for the purpose intended, it is not a delivery. That there was not such an intention in this case, we think, is established by the preponderance of the evidence. And this conclusion is almost a corollary of the first. If plaintiff had not assented to the terms of the settlement, as insisted upon by defendants, it can hardly be supposed that she would have delivered the conveyances. But, independent of this, there is a preponderance of evidence to show that the instruments were not delivered. The attorney holding them states positively that a delivery was not intended. He is supported by many facts and circumstances. One may be mentioned: the release which should have been delivered to plaintiff or her husband, and was in the possession of plaintiff's attorney, passed out of his possession by the very same act that is claimed to have been a delivery of the conveyances to defendants. It is unaccountable that, if he intended to deliver them, he should have placed with them in the hands of defendants the very paper that secured plaintiff, and was intended to be delivered to her, and to which she was entitled.

A great number of witnesses testify to facts, which, it is claimed, show a delivery. Their testimony has more or less force, but, in our judgment, does not overcome the evidence of plaintiff. Some of the defendants testify to facts, as their admission that the settlement had failed, their acts inconsistent and in conflict with the terms of settlement, etc., etc., which support the plaintiff's side of the case. But, as we do not propose to discuss the evidence, nothing further need be said concerning it.

III. The defendants moved to suppress the deposition of the plaintiff, on the ground that she refused to answer questions 3. PRACTICE propounded to her upon the cross-examination. in the Supreme Court: The motion was overruled. Thereupon defendsuppression of deposition. ants moved that the deposition be returned to the officer taking it, and the witness be required to answer the questions. Without determining whether, if the motions had been made at a proper time, either of them ought to have been sustained, we are of the opinion that the action of the

court cannot be regarded as erroneous in the absence of a showing that the motions were timely made. If made at the trial or just at the eve of the case being called, the court would not have been authorized to allow the request of defendants, as it would have, of necessity, worked a delay in the trial. We are to presume in favor of the correctness of the ruling; we will therefore presume that for this, or some other sufficient reason, the motions were overruled.

IV. In the view we take of the case, no question arises as to the right of the intervening mortgagors to foreclose; the rights of the intervening *cestui que trusts* are settled by our conclusions adverse to the defendants. No other questions upon the law or the facts of the case presented in the abstract need be determined.

The judgment of the District Court is

AFFIRMED.