## JANE A. BROOKS
### v.
## THE PEOPLE, use, etc.

1. GUARDIAN'S BOND—JUDGMENT OF COURT CONCLUSIVE UPON SURETIES.—The judgment of the county court, finding the amount due from a guardian to his ward, in the absence of any allegation of fraud or collusion, is conclusive upon the sureties on the guardian's bond and their privies and legal representatives.

2. WHAT CONSTITUTES SUFFICIENT DELIVERY.—Delivery is essential to make a deed effective, and this delivery must be in the lifetime of the grantor. After the writing has been signed and sealed, any acts or words which clearly manifest an intention to consummate and complete it, and to part absolutely and unconditionally with it and all control over it, are sufficient to give legal existence to it as a deed, and constitute a sufficient delivery.

3. DELIVERY OF BOND.—A guardian's bond signed by one surety was presented to the court at the same time with the minor's petition nominating such person as guardian; the court, being of the opinion that said surety was not sufficient, handed the bond back to the obligors. Later the signatures of two additional sureties were obtained. Meanwhile no action upon the minor's nomination having been taken by the court, the minor's attorney, with said sureties, appeared in court, and the sureties were pronounced satisfactory, the judge merely saying, "That is all right," and the attorney, without saying a word, handed the bond to the judge and went away. The evidence tended to show that thereupon, at the request of the sureties, the judge handed the bond to them and they took it away to get another to sign as surety. They were unsuccessful in this, and nothing further was shown as to the whereabouts of the bond. Soon after, before the guardian's appointment, one of these sureties died. *Held*, not a delivery of the bond in his lifetime.

ERROR to the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding. Opinion filed January 6, 1885.

This was an action of debt on a guardian's bond, brought by the people of the State of Illinois, for the use of Stanley B. Sexton, against Jane A. Brooks, the widow and heir at law of Joseph P. Brooks, deceased, one of the sureties on the bond. The bond in suit was one given by Henry M. Curtis, as guardian of said Sexton, and was in the penal sum of $120,-000, and bore date January 3, 1873, and was signed by George F. Bissell, Henry E Seelye and said Brooks, as sureties. Sexton, at the date of the bond, was between nineteen and twenty years of age, he having attained the age of nineteen years on the twenty-third day of August, 1872.

It appears that on the 3d day of January, 1873, the day the bond bears date, an attorney appeared in the County Court of Cook county for said Sexton, and presented Sexton's petition for the appointment of said Curtis as his guardian, and also a guardian's bond signed by Bissell alone as surety.

The evidence tends to show that Bissell appeared at the same time and justified as surety in the sum of $40,000; that the county judge thereupon stated that said surety would not be sufficient; that the attorney handed the bond to the judge who placed upon it as a memorandum the figures $40,000; that the judge then returned the bond to the attorney, who handed it to Curtis to procure additional sureties. It appears that the clerk of the court placed a file mark on both the petition and bond, which purport to show that said papers were both filed on said 3d day of January, 1873, but when and under what circumstances said file marks were placed thereon, does not otherwise clearly appear.

About one or two weeks afterward, Brooks and Seelye having in the meantime also signed the bond, the attorney again appeared in court, accompanied by Brooks and Seelye, and their justification as sureties being satisfactory, the judge said, "That is all right," and the attorney handed the bond to the judge. Seelye, one of the sureties, testifies, and his testimony on this point is nowhere contradicted, that when the bond was handed to the judge, according to his recollection, either Brooks or the witness suggested that they get another signature on it, to divide the responsibility with them; that the person to whom they proposed to apply for that purpose was one C. B. Nelson; that the judge, on their making their purpose in this respect known to him, passed the bond down to them and that they took it away; that witness shortly afterward applied to Nelson to sign the bond with them, which he declined doing. What was then done with the bond, the witness does not recollect. Nothing further is shown as to its whereabouts, and nothing further seems to have been done in the matter of the appointment of said guardian, until the 18th day of July, 1873. In the meantime, on the 28th day of June, 1873, Brooks died.

The only order appearing of record in the county court in relation to the appointment of said guardian, or to the presentation, delivery or approval of said bond, was entered July 18, 1873. That order is as follows:

"This day comes Stanley B. Sexton, a minor, aged nine-

teen years, on the 25th day of August, 1872, a resident of the county of Cook, in the State of Illinois, and presents and files his petition duly verified, praying that Henry M. Curtis, of said county, may be appointed guardian of his estate.

"And it appearing to the court, from all the allegations contained in said petition and from other evidence, that the said Stanley B. Sexton is a minor over fourteen years of age; that he is a resident of said Cook county, and has no father or mother living, or other legal guardian residing in this State, and has an estate consisting of real estate in Chicago, and personal property within said county of Cook, which is estimated to be worth about $60,000, and the said Henry M. Curtis also came and consented to act as such guardian if appointed.

"And it further appearing that the said Henry M. Curtis is a friend of said minor, and a suitable person to have the custody, nurture and tuition of the said minor, and the care and management of his estate, and no person having appeared to oppose the appointment of a guardian to said minor, or to show cause why the prayer of said petition should not be allowed, it is therefore ordered that the prayer of said petition be granted:    Provided, the said Henry M. Curtis first file in this court his bond in the penal sum of one hundred and twenty thousand dollars, conditioned and payable as required by law, and with at least two sufficient sureties, to be approved by this court.

"Pursuant to the foregoing order, now comes the said Henry M. Curtis and presents his said bond, in the penal sum of one hundred and twenty thousand dollars, signed and sealed by himself as principal, and by George F. Bissell, J. P. Brooks and H. E. Seelye, as sureties, and said bond being read and considered by the court, and appearing to be in due form of law, and the court being now sufficiently advised concerning the security thereon, and the same being deemed sufficient and satisfactory, it is thereupon ordered that the said bond be and it is hereby approved, and that the clerk file and record the same, and that the said Henry M. Curtis be and he is hereby appointed guardian as aforesaid, and author-

ized to have the custody, nurture and tuition of the said minor, and the care and management of his estate, and that the clerk issue letters of guardianship accordingly under the seal of this court and record the same."

The final account of said Curtis as the guardian of said Sexton seems to have been filed on the 22d day of May, 1876, but there is no evidence that there was any action taken upon it at that time by the court, but by an order entered March 4, 1880, said account was disapproved and ordered to be re-stated. The account as re-stated showed a balance in the hands of the guardian, due to his ward, of $55,141.10. This account was approved, and the guardian was ordered to pay said sum over to his ward, within thirty days from the date of said order. No part of said money has been paid to said ward.

Brooks died without issue, leaving a last will and testament, and leaving surviving him the defendant, his widow. The defendant duly renounced under said will, and took as her dower and by descent from her husband, all his personal estate after the payment of debts and the expenses of administration, the same amounting to nearly $300,000. No claim was ever presented by Sexton against the estate of Brooks in the county court, and on the 16th day of November, 1875, an order was entered declaring the estate settled and discharging the executors.

The trial, which was before the court and a jury, resulted in a verdict and judgment in favor of the plaintiff for $120,-000 debt, and $68,044.11 damages. The remaining facts are sufficiently stated in the opinion of the court.

Mr. Charles H. Wood and Mr. W. H. Swift, for plaintiff in error.

Messrs. Swett, Haskell & Grosscup, for defendant in error; that the bond was a valid obligation upon the obligors, cited Green v. Wardwell, 17 Ill. 278; Broome v. United States, 15 How. 143; Moore v. State, 9 Mo. 330; People v. Johr, 22 Mich. 461.

The obligation and validity of the bond did not begin with the date of its approval by the county court. It was a valid and obligatory bond from the time of its delivery and acceptance, though no such approval had ever been formally made: Broome v. United States, 15 How. 143; Green v. Wardwell, 17 Ill. 278; Town of Ashkum v. Lake, 12 Bradwell, 25; Jones v. State, 7 Mo. 81.

Acceptance and approval are not synonymous terms in law: 1 Bouvier's Law Dictionary, 47; 2 Parsons on Contracts, 221.

The delivery and acceptance of a bond is a question of fact properly submitted to the jury: Lindsay v. Lindsay, 11 Vt. 621; 8 Watts (Pa.), 9.

As to acceptance of a bond: Reefer v. Walker, 39 Ill. 413; Frizzle v. Beach, 1 Dana's R. (Ky.) 211; Masterson v. Cheek, 23 Ill. 72; Bryan v. Wash, 2 Gilm. 557; Willard v. Same, 4 Mass. 447; Hatch v. Same, 9 Mass. 307; Church v. Gilman, 15 Wend. 656.

The fact that all the acts necessary to the appointment of the guardian were not yet completed at the time of the delivery of the bond, does not make it any the less a valid and binding obligation upon the obligors from the date of its delivery: Broome v. U. S., 15 How. 143; Perryman's Case, 5 Coke, 84–6; Graham v. Same, 1 Vesey, Jr., 272; Froset v. Walch, 51 Year Book, 27 Hen. VI; 13 Viner, Fait's Plea, 7, p. 25; Foster v. Mansfield, 3 Met. 412; O'Kelly v. Same, 8 Met. 436; Exton v. Scott, 6 Sim. 31.

The obligors are estopped by the recitals of the bond from denying that the principal obligor was such guardian: Green v. Wardwell, 17 Ill. 278; Allbee v. People, 22 Ill. 533; Otto v. Jackson, 35 Ill. 359; Shaw v. Havekluft, 21 Ill. 127; Shroyer v. Richmond, 16 Ohio, 455; Charles v. Haskins, 14 Ia. 269; Fredge v. State, 3 Gill & Johnson, 103.

As to revocation of bond: Knotts v. Butler, 10 Rich. Eq, S. C. 143; Fennell v. Maguire, 21 Up. Canada, C. P. R. 134; Bradburry v. Morgan, 1 H. & C. 249; Hassell v. Long, 2 M. & S. 370; Calver v. Jordan, 7 B. & C. 809; Hough v. Warr, 1 C. & P. 151.

As to the finding of the county court as to amount due be-

ing conclusive upon sureties: Ralston v. Wood, 15 Ill. 159; Ammons v. People, 11 Ill. 6; Jessup v. Same, 102 Ill. 480; Housh v. People, 66 Ill. 178; Ream v. Lynch, 7 Bradwell, 161.

BAILEY, J. The defendant has assigned for error, among other things, the decision of the circuit court overruling a demurrer to the second replication to the defendant's eighth plea. Said plea alleges, in substance, that Sexton attained his majority August 25, 1874, and that Curtis, his guardian, thereupon entered into a copartnership with him in the oyster and fish business, which business was afterward carried on by said Curtis and Sexton, as copartners, until the fall of 1875; that during said copartnership, and after said Sexton had attained his majority, and with his assent, a large portion of his estate in the hands of Curtis, his guardian, to wit, $60,000, was used in said business, and by reverses therein became wholly lost, and that the sums so used and lost greatly exceed the sums due said Sexton from said Curtis, as his guardian, at the commencement of this suit or since.

The second replication to this plea alleges, in substance, that on the 22d day of May, 1876, said Curtis, as guardian, filed his final account in the County Court of Cook county, and that at the February term, 1880, of said court, said account came before said court for consideration and approval, and that said Sexton impleaded said Curtis upon the correctness of said account, and that such proceedings were thereupon had thereon, that it was found by the court that there was due from said Curtis, as guardian, on his account, to said Sexton, the sum of $55,141.10, which judgment still remains in full force.

The question raised by the demurrer is, whether the judgment of the county court, finding the amount due from the guardian to his ward, on final settlement, is conclusive upon the sureties on the guardian's bond and their legal representatives and privies, or is only *prima facie* evidence, as to them, of the amount due. On this point the law seems to be too well settled to admit of serious controversy.

In Ammons v. The People, 11 Ill. 6, in a suit against a surety on a guardian's bond, it was held, that an adjudication by the probate court, ordering a guardian to pay a certain sum of money over to his successor, was obligatory upon his sureties, and could be impeached only for fraud or collusion, it being an order of the court which, by the very terms of the bond, the sureties undertook that the guardian should comply with. In Ralston v. Wood, 15 Ill. 159, the same rule was applied in the case of an administrator's bond, and in Housh v. The People, 66 Ill. 178, to the bond of an executor. See, also, Freeman on Judgments, § 180, where the same rule is laid down, and the leading authorities cited.

In the absence, then, of any allegation of fraud or collusion, the order of the county court must be held to be conclusive upon the sureties on the guardian's bond, and being conclusive upon them, it must also, upon well recognized principles of law, be held to be conclusive upon their privies and legal representatives.

But the principal question in the case, and the one to which our attention has been mainly directed, is, whether the evidence shows a delivery of the guardian's bond prior to the death of Brooks.

If there was no delivery before his death, it is clear that there could be none afterward, which would render the bond obligatory upon him or his legal representatives. As said in Huey v. Huey, 65 Mo. 689, "delivery is essential to make a deed effective and this delivery must be in the lifetime of the grantor." So, in Jackson v. Leek, 12 Wend 106, it is held, that a deed of land takes effect from its delivery, and although signed, sealed and acknowledged, if it be not actually delivered by the grantor during his life, nothing passes by it, delivery after the death of the grantor being no delivery. To the same effect are the cases of Jackson v. Phipps, 12 John. 418; Carey v. Dennis, 13 Md. 1; Cook v. Brown, 34 N. H. 460; Miller v. Physick, 24 Ark. 244; Jackson v. Rowland, 6 Wend. 666; and Baldwin v. Maultsby, 5 Iredell, 505.

Was there a delivery of the bond in the lifetime of Brooks? There is no precise or set form in which a delivery must be

made. A deed may be delivered by words without acts, or by acts without words, or by both acts and words. Shep. Touch. 58. After the writing has been signed and sealed, any acts or words which clearly manifest an intention to consummate and complete it, and to part absolutely and unconditionally with it and all control over it, are sufficient to give legal existence to it as a deed, and constitute a sufficient delivery. The Supreme Court, in Bryan v. Wash, 2 Gilm. 557, Gunnell v. Cockerill, 79 Ill. 79, and Byars v. Spencer, 101 Id. 429, has defined the requisites of a valid delivery of a deed in substantially the same language we have here employed, and the same rule is fully sustained by all the authorities. Ruckman v. Ruckman, 32 N. J. Eq. 259; Cook v. Brown, 34 N. H. 460; Prutsman v. Baker, 30 Wis. 644; Younge v. Gilbeau, 3 Wal. 636; Folly v. Vantuyl, 4 Halst. 193; Thatcher v. St. Andrews Church, 37 Mich. 264; Johnson v. Farley, 45, N. H. 505; Brittain v. Work, 13 Neb. 347; Huey v. Huey, 65 Mo. 689; Crawford v. Bertholf, Saxt. 458; Cannon v. Cannon, 11 C. E. Green, 316; Farlee v. Farlee, 1 Zabr. 279; Duer v. James, 42 Md. 492; 3 Washb. on Real Prop. 282.

Applying the foregoing rule to the evidence before us, when must the bond in question be deemed to have been delivered? Certainly not on the 3d day of January, 1873, when it was first presented to the judge of the county court, for at that time it had not been signed by either Brooks or Seelye, and the only object of presenting it to the judge seems to have been to ascertain, provisionally, whether the surety who had then signed would be deemed sufficient. It was handed to the judge after he had expressed the opinion that said surety was not sufficient, for the mere purpose of enabling him to place upon it, for future reference, a memorandum of the amount in which said surety had justified, and it was then returned to the obligors. It is apparent, moreover, that nothing done at that time could have any bearing upon the rights or obligations of Brooks, as he was not then a party to the instrument.

A week or two later, after the signatures of Brooks and Seelye had been obtained, the bond was again presented to the

county judge, and the decision of the case must depend upon the legal effect to be given to what was said and done on that occasion. It should be remembered that at that time Sexton, the minor, had filed his petition, selecting and nominating Curtis for his guardian, but no action had been taken by the court approving or disapproving of such nomination, nor was any such action taken or a guardian appointed by the court until the 18th day of July following. While the proceeding was in this situation, Sexton's attorney appeared in court, accompanied by the two additional sureties, and the sureties being examined were pronounced satisfactory, the judge announcing his decision in relation thereto by merely saying, "That is all right." Thereupon the attorney, without saying a word, handed the bond to the judge and went away. As to what subseque. tly became of the bond, he, as he testifies, has no knowledge.

Here certainly were no *words* indicating an intention to part absolutely and unconditionally with the bond and all control over it, and the delivery, if made at all, was accomplished by the mere act of handing the bond to the judge, unaccompanied by any words manifesting the obligor's intention.

It may well be doubted whether at that time the county judge had any legal authority to accept a delivery of the bond. The statute requires the county court to take a bond of the guardian appointed by it, and it would seem from the language of the statute, that neither the duty nor the power to take a bond arises until the appointment has been made. Here, Curtis had not been appointed guardian and there was no certainty that he ever would be. Before the appointment could be made, the court was required to pass judicially upon his suitableness for the position, and until that had been done and his appointment made or at least determined upon, no bond was due from him. It was, of course, entirely proper for him to prepare his bond and obtain the opinion of the court as to its sufficiency in anticipation of his appointment, but it is, to say the least, doubtful whether the judge, before any authority to require a bond arose, had power to accept the delivery of a

bond, so as to give it present legal existence as the bond of the proposed guardian, and his proposed sureties.

But, waiving this point, was the mere act of handing the bond to the judge so clear a manifestation of the intention of the obligors to part absolutely and unconditionally with it and all control over it, as to constitute in law a delivery? As said in Black v. Shreve, 13 N. J. Eq. 455, " Mere tradition of a sealed instrument, even to the party in whose favor it is drawn, does not necessarily in all cases make it a deed. A deed complete in form, signed and sealed, may be handed to the party for inspection. If he refuse to return it, and claim that the mere tradition of the paper so executed was a legal delivery, he could not hold it. The answer would be that the tradition, although to the party, was not a delivery of the paper as a deed. It was not a final parting with the custody of the paper. A taking under such circumstances would be a tortious taking. Trover would lie for the paper." And as said in Steel v. Miller, 40 Iowa, 402, " The question of delivery is always one of intention of the parties. If the deed passes into the hands of the grantee, without intention on the part of the grantor that it shall become operative and be used for the purpose intended, it is not a delivery."

It would not be inconsistent with the facts proved in this case to assume that the bond was handed to the judge to enable him to inspect it, so as to satisfy himself that it was in due form and conditioned according to law, or so as to be able to identify it when it should thereafter be presented to him for approval. On the former occasion it was handed to him so that he might place on it a memorandum for future reference, and it would do no violence to the evidence to assume that on this occasion it was handed to him for some similar purpose. Where the evidence is equally consistent with two conflicting hypotheses, it can not be said to furnish clear proof of either.

In this connection considerable stress is sought to be laid upon the fact that the bond appears to have been filed by the clerk of the county court; but we are unable to perceive how that fact can have any significance, as it appears from the file

mark that the paper was filed January 3, 1873, the day it was first presented to the court. The fact that it was filed at that time affords no evidence of its delivery by Brooks or Seelye, as they did not sign it and so could not have delivered it until a week or two afterward.

But however doubtful the question of delivery may otherwise be, it is, in our opinion, set at rest by the testimony of Seelye in relation to the disposition made of the bond at the time. He testifies, and there is no evidence tending in the least to rebut his testimony in this respect, that, according to his recollection, he and Brooks, while in court on the occasion above referred to, concluded to get another surety on the bond to divide the liability with them, and so stated to the judge, and that he immediately handed down to them the bond and that they took it away. Their attempt to obtain another surety seems to have been unsuccessful, but there is no evidence that they returned the bond to the judge, and the record is silent as to who had custody of it down to July 18, 1873. The act of these two obligors in taking the bond away, and that of the judge in handing it to them and permitting them to retain custody of it, are inconsistent with the hypothesis that said obligors, when they appeared to justify as sureties, intended then and there to part absolutely and unconditionally with the bond and all control over it, and the mere handing of it to the judge by the attorney with no words explaining or giving character to the act, can not, in the light of the disposition thus shown to have been immediately made of the paper, be held to constitute a delivery.

The hypothesis that the bond, instead of being left in court was taken away by Brooks and Seelye, is corroborated by the recitals in the order of the county court of July 18, 1873. That order recites that Curtis, on receiving his appointment as guardian, came and presented said bond, and that the same being considered by the court, and being deemed sufficient and satisfactory, was approved and ordered to be filed and recorded. It is unnecessary for us to determine whether this record should be given the conclusive effect claimed for it by the counsel for the defendant, but it can not be doubted that,

as between the parties thereto and their privies, its recitals furnish evidence of a very cogent nature. This record shows that on said 18th day of July, 1873, the bond was presented to the court by the principal obligor, thus showing, inferentially at least, that at the time of its presentation it was in his possession, and not in the possession of the court.

We are of the opinion then that the evidence fails to show a delivery of the bond in the lifetime of Brooks. In the absence of such delivery it failed to become operative as to him, and therefore can not be enforced against the defendant. It follows that the verdict of the jury is unsupported by the evidence, and that the judgment must, for that reason, be reversed and the cause remanded.

Judgment reversed.