## Emily C. McElroy

*v.*

## Eliza Hiner *et al.*

*Filed at Ottawa May 14, 1890.*

1. FRAUDULENT CONVEYANCE—*as between the parties.* While a voluntary conveyance of land in fraud of creditors is void as to creditors, it is binding upon the parties so far as it is executed; but neither courts of law nor equity will lend their aid to carry out or perfect any part of the transaction which is left executory.

2. A court of equity will not enforce the trust and confidence growing out of a conveyance made to defraud creditors, at the suit of the fraudulent grantor, or at the suit of his heirs, against the heirs of the fraudulent grantee, or their grantee.

3. A, for the purpose of hindering his creditors, conveyed a tract of land to B, his brother-in-law, and after their death the heirs of B conveyed the land to the widow of A: *Held,* that a court of equity would not treat or hold the widow as a trustee for the heirs of A, and enforce such trust in their favor. The fraudulent grantee or his heirs might dispose of the property as they saw fit.

4. DELIVERY OF DEED—*presumption.* Where a deed, after its signing and acknowledgment, remains in the grantor's possession until after the death of the grantee, there will arise a *prima facie* presumption that the deed was never delivered.

5. SAME—*what will constitute a delivery.* To constitute a sufficient delivery of a deed no particular formality need be observed. A deed may be delivered by words without acts, or by acts without words, or by both acts and words; but there must be something answering to one or the other, or both of these, with an intent to give effect to the deed.

6. SAME—*delivery to a stranger.* Doubtless a delivery of a deed by the grantor to a stranger having no authority to accept it for the grantee, would be a valid delivery, provided the grantee should afterward accept the deed; and such acceptance by the grantee might be shown by implication. But to make a delivery to a stranger effectual, the intention with which the delivery was made must be expressed at the time.

7. SAME—*delivery after grantee's death.* Where the maker of a deed retains its custody and possession until after the death of the grantee, the fact that the widow of the grantee obtains the deed and places it on record will not give validity to the instrument. There can be no valid delivery after the grantee's death.

APPEAL from the Circuit Court of Iroquois county; the Hon. ALFRED SAMPLE, Judge, presiding.

Mr. R. W. HILSCHER, for the appellant:

There is nothing to show the creation of a trust between Henry McElroy and Norman S. Brown. The deed from McElroy to Brown is absolute. It does not disclose, on its face, a trust created. Rev. Stat. chap. 59, sec. 9; *Rogers* v. *Simmons,* 55 Ill. 80; *Stevenson* v. *Crapnell,* 114 id. 19; *Lawson* v. *Lawson,* 117 id. 98.

A deed to hinder and delay creditors of the grantor is binding upon him and his heirs. *Harmon* v. *Harmon,* 63 Ill. 512; *Rawson* v. *Fox,* 65 id. 206; *Campbell* v. *Whitson,* 68 id. 240.

A deed is without effect till it is delivered. *Skinner* v. *Baker,* 79 Ill. 499; *Weber* v. *Christen,* 121 id. 96; *Wiggins* v. *Lusk,* 12 id. 135.

No presumption of delivery arises from the mere fact that the instrument is signed or acknowledged. *Boyd* v. *Slayback,* 63 Cal. 493.

There can be no delivery to a dead person. *Hulick* v. *Scovil,* 4 Gilm. 159; *Morgan* v. *Hazelhurst Lodge,* 53 Miss. 665; *Jackson* v. *Phipp,* 12 Johns. 419.

A deed signed and acknowledged, but found in the grantor's possession at the time of his death, will be presumed never to have been delivered. *Burton* v. *Boyd,* 7 Kan. 17; *Peterson* v. *Smell,* 67 Me. 559.

The grantor must part with all control over the deed. It can not take effect while it remains in his possession and subject to his control. It must be accepted by the grantee, or some one for him. *Wiggins* v. *Lusk,* 12 Ill. 132.

The intention to deliver and lose control of the deed must be clearly manifested. *Bryan* v. *Wash,* 2 Gilm. 565, and the cases cited.

To constitute a delivery, the grantor must do some act putting it beyond his power to revoke. There can be no delivery

so long as the deed is within his control and subject to his authority. (*Duer* v. *James*, 42 Md. 492.)    To the same effect are *Johnson* v. *Farley*, 45 N. H. 492; *Woodbury* v. *Fisher*, 20 Ind. 383; *Buchanan* v. *Buchanan*, 33 N. J. Eq. 354.

Mr. ISAAC SCHOONOVER, and Messrs. KAY, EUANS & KAY, for the appellees:

The delivery does not depend upon words, alone, but upon them taken in connection with and construed by the subsequent acts of the parties.  If the grantor in the deed intends, when executing it, to be understood as delivering it, that is sufficient.    *Jordan* v. *Davis*, 108 Ill. 336; *Walker* v. *Walker*, 42 id. 311; *Masterson* v. *Cheek*, 23 id. 76.

Less strictness is required when the parties place great confidence in each other.    *Bryan* v. *Wash*, 2 Gilm. 568; *Walker* v. *Walker*, 42 Ill. 311.

A controlling element in determining the delivery as well as the acceptance of a deed, is the intention of the parties.    Delivery and acceptance may be inferred from facts and circumstances manifesting an intention.    *Thompson* v. *Candor*, 60 Ill. 244; *Masterson* v. *Cheek*, 23 id. 76; *Walker* v. *Walker*, 42 id. 311.

Where nothing else is expected to be done by the beneficiary or grantee to complete the transaction as a whole, a formal sealing and delivery, without an actual delivery to the other party, or to a third person for his use, will be sufficient to make a declaration of trust or deed or mortgage operative immediately.    *Jordon* v. *Davis*, 108 Ill. 336; *Linton* v. *Brown*, 20 Fed. Rep. 455.

If Brown held the title as trustee, the execution of the deed to McElroy may be likened to a voluntary settlement.  Strong presumptions are indulged in favor of the delivery of such deeds,—stronger than in ordinary cases of bargain and sale. *Bryan* v. *Wash*, 2 Gilm. 557; *Reed* v. *Douthit*, 62 Ill. 348;

*Walker* v. *Walker*, 42 id. 311; *Souverbye* v. *Arden*, 1 Johns. Ch. 240; *Bruner* v. *Winthrop*, id. 329; *Cline* v. *Jones*, 111 Ill. 563.

If McDonald was the agent of McElroy to receive the deed, and Brown signed it, and delivered it to McDonald to certify an acknowledgment, and McDonald, after doing so, laid the deed on the desk and left it there, without any request or intimation from Brown that he should do so, would not this constitute a delivery? *Byars* v. *Spencer*, 101 Ill. 429.

The assent of the grantee is implied when the deed is beneficial to him. *Wiggins* v. *Lusk*, 12 Ill. 132; *Rivard* v. *Walker*, 39 id. 414; *Tunison* v. *Chamblin*, 88 id. 378.

The simplest assent to the conveyance, given before its execution, is sufficient. *Lessee* v. *Ryan*, 3 Ohio, 380.

Whether the grantor has lost control of the deed is a legal inference drawn from the surrounding circumstances. It is sufficient if the grantor has parted with his right to retain it. *Gunnell* v. *Cockerill*, 84 Ill. 319; *Rivard* v. *Walker*, 39 id. 413; *Young* v. *Guilbeau*, 3 Wall. 641; *Insurance Co.* v. *Campbell*, 95 Ill. 267.

After acceptance the grantee may make the grantor custodian. *Bennett* v. *Waller*, 23 Ill. 97; *Walton* v. *Burton*, 107 id. 54; *Otis* v. *Spencer*, 102 id. 622.

Mere retention of the deed by the grantor will not affect its validity, unless it be understood or declared, at the time of its execution, that it is not to pass out of the grantor's possession. *Welborn* v. *Weaver*, 63 Am. Dec. 235; 17 Ga. 267; *Farrar* v. *Bridges*, 42 Am. Dec. 439; 5 Humph. 411.

Mr. Justice Bailey delivered the opinion of the Court:

This was a bill in chancery, brought by Eliza Hiner, Susan McElroy and Edward T. McElroy against Emily C. McElroy, for a partition of the south-west quarter of section 13, township 25, north, of range 10, west of the 3d principal meridian,

in Iroquois county, Illinois. The complainants are the sisters and brother, and the defendant is the widow, of Henry McElroy, who died intestate on or about October 8, 1882. Henry McElroy left no children or descendants, his sisters, brother and widow being his only heirs at law. The complainants, by their bill, claim that at the time of his death Henry McElroy was seized in fee of said land, and that an undivided one-half of said land descended to his widow, and that the other undivided one-half descended to the complainants as tenants in common, subject to the dower of said widow. The defendant, on the other hand, denies that her husband died seized of said land, but claims to be herself the owner of it all in severalty through mesne conveyances from her husband.

It is admitted that McElroy entered and purchased said land from the United States, and that the same was conveyed to him by patent dated September 10, 1859. It appears that by deed dated April 19, 1869, and recorded May 17, 1870, said deed reciting a consideration of $4000, McElroy and wife conveyed said land to Norman S. Brown. It also appears that on the 22d day of October, 1877, Brown and wife signed and acknowledged a deed, reciting a consideration of $4000, conveying said land back to McElroy, but it is contended that said deed was never delivered during the lifetime of McElroy, and whether or not there was such delivery is one of the principal matters in controversy in this case. It is not disputed that said deed, after it was signed and acknowledged, remained in the actual custody of Brown until after McElroy's death, and that it was then handed over to Mrs. McElroy, who caused it to be placed on record. Brown died on or about June 8, 1886, and on the 14th day of July, 1886, his widow and heirs executed a deed conveying to Mrs. McElroy, the defendant, all their interest in said land.

In their bill the complainants allege, among other things, that, at the date of the deed from McElroy and wife to Brown, McElroy was and for many years had been engaged in the

mercantile business at Attica, Indiana, and that he had then become involved in debt, and feared that if pressed by his creditors, he would not be able to pay his debts and would lose his property, and that while so embarrassed and under the influence of such fear, he executed the deed conveying said land to Brown, who was his brother-in-law; that while said deed expressed a consideration of $4000, it was wholly without consideration, and was made for the sole purpose of putting the legal title to said land in said Brown to hold for the use of McElroy; that McElroy, during the residue of his lifetime, continued to rent said land in his own name and to receive the rents, issues and profits thereof, and to pay the taxes thereon, and in all respects used and controlled said land as his own absolute property; that the title remained in Brown until on or about October 22, 1877, when McElroy, having become relieved from the burden of his indebtedness, requested Brown to reconvey said land to him, and for the purpose of having said conveyance made, McElroy sent one McDonald, an attorney and notary public, to Brown, at his residence, to prepare a deed of conveyance from Brown to him; that Mc-Donald repaired to Brown's residence and then and there wrote out in due form a warranty deed of said land from Brown and wife to McElroy; that Brown and wife then and there signed said deed so prepared, and acknowledged the same in due form of law before McDonald as notary public, and that McDonald then and there endorsed on said deed a certificate of such acknowledgment; that the consideration expressed in said deed was $4000, but that in fact said deed was made simply to put the legal title to said land back in said McElroy, and was made at that time because Brown was sick, and it was feared that he might die; that for some reason unknown to the complainants, McElroy, at the time said deed was executed, did not wish it to be known that he held the legal title to said land, and so he arranged with Brown to leave said deed with him for safe-keeping, but, as the complainants aver and believe, it was understood

11—133 ILL.

by and between Brown and McElroy that said deed was, at the time it was made and acknowledged, delivered to McElroy, and that Brown thenceforth held the same as custodian for McElroy; that said deed so remained in the custody of Brown for McElroy until McElroy's death, and then Brown, at the request of the defendant, delivered said deed to her, and that she soon after placed it on record; that after the deed was recorded, the defendant repossessed herself of it and retains it, but in order to cheat and defraud the complainants of their lawful rights, she fraudulently pretends that said deed was never delivered by Brown, and therefore that McElroy did not die seized of said land; that after Brown's death, the defendant procured a quitclaim deed of said land to be executed to her by the widow and heirs of Brown, but that said deed was made for the sole purpose of cheating and defrauding the complainants out of their lawful rights as the heirs of McElroy; that if it should appear that the deed from Brown to McElroy was never delivered, and that Brown died seized of the legal title to said land, then the defendant, as to the undivided one-half of said land, became seized by virtue of said quitclaim deed, in trust for the complainants, as heirs at law of McElroy.

The bill waived an answer under oath, and the defendant, by her answer, which was without oath, among other things, admits that McElroy was engaged in the mercantile business as alleged in the bill, but denies that he deeded said land to Brown on account of financial troubles, or of fears that he could not pay his debts, or with intent to hinder, delay or defraud his creditors. She admits that Brown was a brother-in-law of McElroy, but denies that said deed was made for the sole purpose of putting the title to said land in Brown to hold for the use and benefit of McElroy. She admits that McElroy afterward had the renting of said land and received the rents therefrom, and alleges that Brown held the legal title thereto down to the time of his death. She admits that on or about October 22, 1877, a deed was drawn, signed and acknowledged

by Brown, which, on its face, purported to convey said land to McElroy, but denies that anything more was done by Brown to perfect said conveyance, and denies that it was arranged between Brown and McElroy that McElroy should leave said deed with Brown for safe-keeping, or that said deed was ever in any manner delivered to McElroy, or that Brown in any manner ever held said deed for McElroy but on the contrary, she avers that there never was a delivery of said deed by Brown, and that he never performed any act after the deed was made which was intended by him as a delivery. She admits that after the death of McElroy, Brown handed said deed to her, and that she caused it to be recorded, and that after it was recorded it was returned to her, but she avers that said deed is void and never passed any title, for the reason that it was never delivered. She denies that she is seeking to cheat and defraud the complainants, but avers the fact to be, that McElroy did not die seized in fee of said land, but that at the time of McElroy's death, Brown owned said land in fee, and afterwards died owning the same. She admits Brown's death, and that she procured a conveyance of said land from Brown's widow and heirs to herself, and avers that since the execution of said conveyance, she has been the owner of said land in fee.

A replication having been filed, the cause was heard on pleadings and proofs, and on such hearing a decree was entered finding that McElroy, at the time of his death, was seized in fee of said land, and that upon his death the defendant, as his widow, became entitled to an undivided half of said land in fee and her dower in the other half, and that the complainants each became entitled to an undivided one-sixth of said land, subject to the defendant's dower, and also finding that the defendant, since the death of her husband, had received the rents and profits of said land, and is liable to account to the complainants for their equitable share of such rents and profits. The decree thereupon provided, in the usual form, for a partition of said land between said parties

according to their interests as thereby found and established, and for the appointment of commissioners to make such partition, and the cause was referred to a master to state the amount for which the defendant is liable to account for rents and profits received by her, and it was ordered that whatever amount should be found due from the defendant to the complainants on such statement of account should be a lien upon the portion of said land which should be assigned to the defendant. From this decree the defendant has appealed to this court.

The complainants, by their bill, put forward two theories upon one or the other of which they seek to establish their interest in said land. The first is, that the deed of October 22, 1877, from Brown and wife to McElroy was duly delivered and accepted, and that by virtue of said deed McElroy became seized of an estate in fee in said land, and was so seized at the time of his death. The second is, that in case it turns out that said deed is inoperative for want of delivery or acceptance, still Brown held said land in trust for McElroy, and it descended to his heirs and was conveyed by them to the defendant impressed with such trust, and therefore, that the defendant, after the conveyance to her by the heirs of Brown, held it in trust for herself and the complainants according to their respective rights as the heirs at law of McElroy. The Circuit Court seems to have been of the opinion that said deed was duly delivered and accepted, and to have pronounced its decree upon that basis. But as it is claimed that the decree may be sustained upon the second theory above mentioned, even if the proof fails to establish a sufficient delivery, we will consider that theory first.

It may be admitted that the case is not complicated by any question arising under that provision of the Statute of Frauds which requires that all declarations or creations of trusts or confidences of any lands shall be manifested and proved by some writing signed by the party who is enabled by law to

declare such trust, since that statute is not pleaded or in any manner relied upon by the defendant. But the more serious difficulty arises from the fact that the trust which the court is asked to enforce is the secret trust or confidence created in Brown by the fraudulent conveyance of said land to him by McElroy. The equity of the bill, so far as this branch of the case is concerned, rests upon the allegation that said conveyance was made with intent to hinder, delay and defraud the creditors of the grantor, and the question is whether a court of equity will, in any manner or to any extent, aid in the enforcement of a trust thus created.

The rule is too well settled to require discussion, that a voluntary conveyance of land in fraud of creditors, while void as to creditors, is binding upon the parties so far as it is executed, but that neither courts of law or equity will lend their aid to carry out or perfect any part of the transaction which is left executory. In such case the trust or confidence reposed in the fraudulent grantee will not be enforced. But it is said that here the fraudulent grantee, or rather his heirs and legal representatives who merely stand in his place, have voluntarily executed the trust by conveying the land to one of the heirs of the fraudulent grantor. Doubtless, so far as the trust has been executed its execution will be upheld, but that is not because a court of equity will recognize or uphold the trust itself, but because it recognizes the power and right of the fraudulent grantee to dispose of the property as he sees fit. The conveyance to the defendant by the heirs of Brown is undoubtedly valid, and so far as we can see it would have been equally valid if it had been made to any other grantee. Said heirs, if they had seen fit to do so, might have conveyed the land to the defendant to hold in trust for herself and the other heirs at law of McElroy, but they did not do so. The trust with which the defendant is sought to be charged is the same identical trust and confidence which was created in Brown by the fraudulent conveyance to him, and a court of equity can no

more enforce it against the defendant than it could have done against Brown himself or his heirs.   It is clear that if McElroy had been alive, he could not have insisted that the conveyance from the heirs of Brown to the defendant, his then wife, was charged with a trust which he could enforce in his own favor, nor is there any reason for holding that his heirs stand in any better position.   The trust or confidence, if it exists, derives its being and vitality solely from the fraudulent conveyance, and not from the deed from Brown's heirs, and a court of equity therefore will no more enforce it in favor of the heirs of the fraudulent grantor than it would have done in favor of such grantor himself.

We will now consider the question whether the evidence is sufficient to sustain the finding of the Circuit Court that there was a delivery and acceptance of the deed from Brown and wife to McElroy.   It is admitted that said deed, at the time it was signed and acknowledged by the grantors, remained in Brown's possession, and that it remained in his possession until after McElroy's death.   From these facts there arises a *prima facie* presumption that there was no delivery.   Is the evidence sufficient to overcome such presumption?

To constitute a sufficient delivery of a deed, no particular formality need be observed, provided the intention to deliver is sufficiently manifested.   A deed may be delivered by words without acts, or by acts without words, or by both acts and words, but there must be something answering to one or the other or both of these, with an intent to give effect to the deed. 3 Washburn on Real Prop. (4th Ed.) 286 ; Tiedeman on Real Prop. sec. 813.   The rule is laid down by this court in *Bryan* v. *Wash,* 2 Gilm. 557, and repeated in *Gunnell* v. *Cockerill,* 79 Ill. 79, and *Byars* v. *Spencer,* 101 id. 429, in the follow language : "No particular form or ceremony is necessary to constitute a delivery.   It may be by acts without words, or by words without acts, or by both.   Any thing which clearly manifests the intention of the grantor, and the person to whom it

is delivered, that the deed shall presently become operative and effectual; that the grantor loses all control over it, and that by it the grantee is to become possessed of the estate, constitutes a sufficient delivery." See also *Brooks* v. *The People*, 15 Ill. App. 570, and authorities cited.

The only persons who were present when the deed was acknowledged, and at the time of its delivery if it ever was delivered, were Brown and wife, McDonald the attorney and notary public who drew the deed and before whom it was acknowledged, and Laura B. McMaster and Augusta Dixon who signed the deed as attesting witnesses. The attesting witnesses both testify that they have no recollection of what took place except that they were called upon to sign the paper as witnesses. Mrs. Brown is equally unable to state what was done with the deed after it was made, but can only say that it remained in Brown's desk until after McElroy's death, and that when Mrs. McElroy came for it, the witness requested her son to go to the desk and get it and hand it to her, which was done. Brown is dead, and the only witness remaining is McDonald.

The record contains two depositions of McDonald, one taken on behalf of the complainants and the other on behalf of the defendant. In the first of these depositions, the witness, after stating that, in McElroy's lifetime, he had acted as his attorney in various other matters, testified as follows:

"I made a deed, the date of which I do not now remember, at the request of Henry McElroy, from N. S. Brown and wife to Henry McElroy, for land, if I recollect rightly in Illinois, the only deed to Illinois land I ever made between the parties, and I also took the acknowledgment. I think it was about ten years ago. Within a day or two after I had written the deed and it had been signed and acknowledged by the grantors, I met Mr. McElroy on the street and mentioned to him the fact that I had made the deed. Mr. McElroy paid me for making it. Upon one occasion, I don't recollect whether it was at the time he asked me to make the deed in question

or not, Mr. McElroy said to me that he had put his property in such shape, or out of his hands, in order that his creditors might all be treated equally, and to keep some of them from getting more than others, so that he could settle with them as they deserved. This is as near the substance of what he said as I can recollect. The deed was made at the residence of Brown in Attica, Indiana. I had been requested by McElroy to stop there and make the deed. There was no one present when the deed was made and acknowledged but Brown and wife, Laura B. McMaster and Mrs. Augusta B. Dixon, which last named person I called merely as a witness.

"Question. What do you know about N. S. Brown's making any delivery of this deed to Henry McElroy?

"Ans. Nothing whatever. I left the deed at Brown's and never saw it till last summer in the hands of McCabe, counsel for the defendant."

His testimony in his second deposition is as follows:

"I was employed by Henry McElroy in various ways, among which was making a deed, the date of which I have forgotten, from N. S. Brown to Henry McElroy, for the land in controversy. I found Mr. Brown at his residence where he had been confined by illness, and drew the deed up there, and after it was signed, left it with him. I don't think I have seen it since. I went to the house, as suggested by Mr. McElroy, and Mr. Brown, I think, gave me the deed from which the description was taken. The deed was drawn and signed and Mrs. Laura McMaster and Mrs. Augusta B. Dixon were called in as witnesses. I do not now recollect who if any one suggested anything concerning the consideration and description, except that the deed from which it was drawn was handed me by Brown. I delivered the deed to Mr. Brown, or left it with him, and came away. Mr. McElroy was not present at the time. Mr. and Mrs. N. S. Brown, Laura McMaster and Mrs. Augusta B. Dixon, and I am not certain but that Mrs. McElroy was present, though I do not recollect about that now. I

do not know what Brown did with the deed after it was completed, as I came away after leaving it with him. It was there on his desk when I came away.

"I was requested by Mr. Henry McElroy to go to Mr. Brown's house and have the deed executed as I have stated. The first knowledge I had that such deed was to be executed came from Mr. McElroy. I do not think that at the time Mr. McElroy told me to go to Mr. Brown's house and have the deed executed, he told me to leave it there. I do not think he said anything about what I should do with it. I merely left it, knowing their relationship and I supposed they understood it. The only knowledge I had as to whether McElroy was the real owner of the land in controversy, and that the legal title had been passed to Brown in pursuance of an arrangement between them for the purpose of enabling McElroy to make easy settlements with his creditors came to me entirely from a conversation had with Mr. McElroy at the time he asked me to make the deed. I had no conversation with Mr. Brown except at the time I drew the deed, which I have stated. Mr. McElroy requested me to make the deed saying something concerning the fact that Mr. Brown held the title to some real estate, not mentioning any in particular, that I now recollect, during his financial troubles. At the time I went to Brown's house to have the deed executed, Mr. Brown knew the purpose for which I went there, because sometime before that I stopped at his house on my way home and told him I would be there at sometime that would suit his convenience, for the purpose of making the deed to the land in controversy, and he fixed the date to have the deed executed. I afterwards informed Mr. McElroy that the deed had been executed, and that I had left it with Mr. Brown, and when Mr. McElroy and I finally settled some other business sometime afterward, the deed was paid for."

The foregoing is all the evidence of this witness relating to the deed, and all those portions of it having any material bearing upon the question of delivery are given literally. We are

unable to find in any part of it any evidence of a delivery of the deed. The deed was drawn up, signed, witnessed and acknowledged, and the notary, after indorsing upon it the certificate of acknowledgment, handed it to Brown, and there the evidence leaves it. No act is shown to have been performed by Brown, nor is any word shown to have been spoken by him, evincing an intention on his part to surrender his control and dominion over the instrument, or an intention that the deed should become presently operative and effectual as a conveyance. As to those matters the evidence is absolutely silent.

McDonald, the notary, was employed by McElroy merely to draft the deed and have it properly signed and acknowledged, but there is no evidence that he was authorized or instructed to receive on McElroy's behalf a delivery of the instrument. Doubtless a delivery to him without any authority on his part to accept it for the grantee would have been a valid delivery, provided McElroy afterward accepted it, and such acceptance by McElroy might have been shown by implication, but to make a delivery to a stranger effectual, the intention with which the delivery was made must be expressed at the time. (Tiedeman on Real Prop., sec. 814.) But here there is no evidence even of a delivery to McDonald, and much less of an expression of the intention with which such delivery was made. The fair inference is that a further meeting between Brown and McElroy was anticipated at which the conveyance would be consummated. McDonald, in relating what occurred, said: "I merely left it, knowing their relationship, and I supposed they understood it." They were brothers-in-law living near each other, and presumably meeting on frequent occasions, and McDonald therefore very properly concluded that the matter of delivery was one to which they could themselves attend, and which required no thought or attention on his part. A few days afterward McDonald notified McElroy of what had been done so as to enable him to call and get his deed, but his

failure to do so before death overtook him left the transaction incomplete, and the conveyance inoperative.

The fact that Mrs. McElroy obtained the deed from Brown after her husband's death could not give validity to the instrument. There could be no valid delivery after McElroy's death. (*Brooks* v. *The People, supra,* and authorities cited.) Nor, in our opinion, can the fact that Brown, at the time Mrs. McElroy called for the deed, spoke of it as a paper belonging to McElroy, be held sufficient to establish a delivery before McElroy's death.

There being a failure to show a delivery of said deed in the lifetime of McElroy, it follows that at the time of his death, he had no estate in the land in controversy, and that none descended to the complainants as his heirs at law. The decree therefore is unsupported by the evidence, and it will accordingly be reversed and the cause will be remanded to the Circuit Court with directions to dismiss the bill for want of equity at the costs of the complainants.

*Decree reversed.*