### [No. 1454.]

### McDonald et al. v. The People to the use of Denk- inger et al.

1. Parties—Guardian's Bond.

An action on a guardian's bond made payable to the people of the state of Colorado for the use of minors is properly brought in the name of the people to their use.

2. Guardian's Bond—Misnomer—Variance.

Where a guardian's bond named one of the minors as "Lizzie," and a complaint on the bond named her as "Bessie," but alleged that these were different names for the same person, and the evidence showed that amongst her acquaintances she was sometimes called by one and sometimes the other name, there was no variance between the bond and complaint.

3. Guardian's Bond—Action on—Evidence.

In an action on a guardian's bond to recover money, for the use of the minors, alleged to have been converted, where the guardian had become insane and a conservator of her estate appointed, an order in the matter of the estate of the lunatic, made on the application of the conservator, whereby he was directed to pay over to the new guardian from the estate of the lunatic a certain sum of money, was not sufficient evidence of a conversion to sustain a judgment on the bond. In the absence of an order in the guardianship proceedings, and against the guardian, the conversion should be established by the same kind of evidence required in any ordinary suit for wrongful conversion.

*Appeal from the County Court of Pueblo County.*

Mr. M. J. Galligan, for appellants.

Mr. L. A. Crane and Messrs. Arrington & McAliney, for appellee.

Thomson, P. J.

The appellants were sureties on a bond given by Mary A. Denkinger as guardian of Bessie Francis Denkinger and Leo Denkinger. She was duly appointed such guardian on the 28th day of January, 1890. On the 6th day of December, 1890, she filed a report which showed in her hands $283.98, received from the estate of the deceased father of the minors. On the 4th day of December, 1891, she was adjudged insane, and a conservator was appointed to take charge of her estate. On the 5th day of December, 1891, B. F. Kidwell was appointed guardian of the minors in her place. On the 7th day of March, 1892, the conservator recommended that $1,767.25 be allowed against her estate, and in favor of Kidwell as guardian. The allowance was accordingly made by the court. No proof seems to have been introduced, nor any finding made. So far as the record shows, the only reason for the allowance was the recommendation of the conservator. On the 30th day of December, 1895, the conservator paid to Kidwell, on account of the allowance, $652.87, and on the same day made his final report, and was discharged. This suit was brought in the name of the people, by Kidwell as guardian, to the use of the minors. The complaint alleged that prior to being adjudged insane, Mary A. Denkinger had received and converted to her own use $1,767.25 of the money of the minors, of which sum $652.87 had been paid by the conservator of her estate, and demanded judgment for the balance, with interest. Verdict and judgment went accordingly, and the defendant appealed.

Some questions of minor importance may be disposed of by saying that the bond was made payable to the people of the state of Colorado, for the use of the minors, and that the suit was therefore properly brought in the name of the people

to their use.  Further, one of these minors is named Lizzie Francis Denkinger in the bond, and Bessie Francis Denkinger in the complaint.  The complaint alleged that these were merely different names for the same person.  It appears that Mrs. Denkinger, in her petition for appointment as guardian, described the child as Bessie, and it also appears that among the child's acquaintances, sometimes one and sometimes the other name was applied to her.  It is evident to us that Bessie means Lizzie, and that Lizzie means Bessie, and that hence there was no real variance between the bond and the complaint.

But there was a fatal failure in the proof to establish the charge of conversion.  The only evidence on the subject was the record of the allowance by the court of $1,767.25, against the estate in the hands of the conservator, and in favor of the then guardian.  The bond was conditioned for the faithful discharge by Mary A. Denkinger of the office and trust of guardian according to law ; the rendering by her of a fair and just account of her guardianship to the county court from time to time as required by the court ; the compliance by her with all orders of the court, lawfully made, relative to the goods, chattels and moneys of the minors ; and the rendering and payment to the minors of all moneys, goods and chattels, title papers and effects, coming into her possession and belonging to the minors, when they should be thereunto entitled, or to any subsequent guardian when the court should so direct.  It is insisted that the order of allowance of March 7, 1892, is conclusive upon the defendants.  Our opinion is that it was not only not conclusive, but that, as against them, it does not even make a *prima facie* case.  The liability of sureties on a bond like this is limited by the terms of their undertaking, strictly construed.  *People v. Cobb*, 10 Colo. App. 478.  By the terms of this bond, the defendants undertook that their principal should render accounts of her guardianship as required by the court, and should comply with the lawful orders of the court in relation to the property of the minors, and because they so undertook, and for no

other reason, orders of the court, regularly made in pursuance of the terms of the bond, would be binding upon them. *Brooks v. People*, 15 Ill. App. 570. Therefore the only orders of the court which could be evidence against them in a suit on the bond, would be orders made upon the guardian personally, in relation to her guardianship accounts, or in relation to the property of her wards in her possession, and such orders must be made in the guardianship proceeding. There is no pretense that she ever became liable by reason of any order of the court made upon her, and it is only an order made within the terms of the bond, and made upon her personally, which would be competent evidence against her sureties.

The complaint charged that she received, and converted to her own use, before the adjudication of lunacy, $1,767.25 of the money of her wards. If the charge is true, the sureties must respond, because they undertook that she should pay to the minors all moneys coming into her hands to which they were entitled, but in the absence of any order of the court made in the guardianship proceeding while she was guardian, by which the charge might be supported, the evidence necessary to a recovery would be the same as that required in any ordinary suit for wrongful conversion. The court held the order of allowance against the lunatic's estate sufficient, and, more than that, adjudged it conclusive. That order was outside of the guardianship proceeding; it was not, and could not be, an order upon her; at the time it was made, she was incapable of denying or admitting a charge, or of understanding an order; it contained no finding of fact; it was made without evidence, and might, for aught the record shows, have been the result of collusion, for the very purpose of forcing money from the sureties. But however regular it may have been, it was not an order contemplated by the bond, or in relation to which the sureties entered into any undertaking whatever, and, as evidence against them, it was utterly incompetent and inadmissible.

Let the judgment be reversed.

*Reversed.*