HUEY, PLAINTIFF IN ERROR v. HUEY.

1. **Delivery of Deeds:** The mere lodgment of a deed properly executed and acknowledged by the grantor, in a place to which the grantee has access, and from which he can, without hindrance, transfer it to his own possession, with the intent on the part of the grantor that the grantee may after his death take it, and have it recorded, and then become the owner of the land, does not constitute delivery of the deed; and the taking and recording of such a deed by the grantee, after the death of the grantor, is ineffectual to perfect it.

2. **Case Adjudged:** A father having already given land to each of his other sons, executed and acknowledged an instrument conveying a tract to defendant by way of gift, and with defendant's knowledge deposited and kept it with his other papers in a chest to which defendant, who lived with him, had access. The father declared that his intention was that defendant should have the deed and the land after his death, and that the deed should not be recorded until then, since he might have occasion to make a change. After his

father's death defendant took the deed and had it recorded. *Held*, that the declarations of the father could not give a testamentary character to the instrument, and that it could not take effect as a deed for want of delivery.

*Error to Cape Girardeau Court of Common Pleas.* — HON. H. G. WILSON, Judge.

*Lewis Brown*, for plaintiff in error, cited *Hatch v. Hatch*, 9 Mass. 307; *Foster v. Mansfield*, 3 Met. 412; *O'Kelly v. O'Kelly*, 8 Met. 439; 1 Shep. 57; 2 Black. Com. 307; 4 Viner 27, § 52; 2 Wash. Real Prop. 602 to 618.

*Houck & Ranney*, for defendants in error, cited *Games v. Stiles*, 14 Pet. 322; *Goodrich v. Walker*, 1 Johns. Cas. 250; 4 Comyn's Dig., p. 158; *Shed v. Shed*, 3 N. H. 432.

HOUGH, J.—The only question presented by the record in this case, is whether one Enoch Huey, deceased, ever delivered to his son, Grigg M. Huey, the defendant herein, a deed for certain land in which the plaintiff, as widow of said Enoch Huey, now claims a homestead. The cause was tried by a jury, who found under the instructions of the court, that the deed was delivered to the defendant. The facts are as follows: On the 7th day of April, 1867, Enoch Huey signed, sealed and acknowledged a conveyance of certain real estate for and in consideration of the sum of one dollar, and the natural love and affection he bore to his son, Grigg M. Huey, the grantee therein and the defendant in this suit, who at that time resided with his father. The deed was executed by Enoch Huey alone, his wife not joining, and after its execution was placed by said Huey in a chest in his dwelling, in which all the papers about the house were kept, and to which the defendant had access. Enoch Huey died in January, 1871. About one month after his death the defendant took the deed and put it on record. The plaintiff, who was a witness, stated that she did not know whether her husband had ever given the deed up to his son; that he had it made

for him and that Grigg always knew where it was, and if he had wanted it in his possession, he could have taken it. She further stated that she had heard his father tell him, " he did not want it recorded before his death; he could have it recorded after his death."

Jas. McGarvey testified as follows: I knew Enoch Huey in his life time. I was called to see him professionally a short time before he died. He talked about a deed. He told his son Grigg to get it out of the chest, which he did. The old man told me to look at it and see if it was correct. Grigg was not in the house at first; his father called for him, told him to go into the back room and get that paper. He brought it and gave it to one of us, I don't remember which. I read it. I think he told Grigg to go out of the room. I told him I thought it was a good instrument. Enoch Huey told me that he did not wish to deliver the deed to his son until after his death, that he did not know what might happen, as he wanted his wife well cared for. The deed was put back in the chest.

Cross-examination. He was sick, but was so he could walk to the fire place. Grigg put the deed back in the chest at his father's order. The old man said to me if Grigg deviated in his treatment of his mother, he might make a change. I heard him say that he intended Grigg to have the deed after his death.

E. D. Engleman testified as follows: I wrote this deed. Enoch Huey said he wanted it in such shape that he would be owner of it as long as he lived. He wanted to secure the farm to Grigg, his son. I told him he could make a deed and hold it in his possession, and not have it recorded until such time as his son would not treat him as the others had. He said he had given land to his other sons, and had kept this land for Grigg. He took the deed with him. The deed, which was an ordinary conveyance, was read, and this was all the evidence in the cause.

The court gave numerous instructions, enunciating abstract propositions of law, about which there could be but

little controversy, and only one which was really applicable to the facts of the case. That instruction is as follows: "The court instructs the jury that if they believe from the evidence that Enoch Huey left the deed where Grigg M. Huey, the defendant, could get it at the proper time, and if they further find that said Enoch Huey intended that the defendant should have the title to the land, and should take the deed in actual possession at the time specified, that this act and this intention on the part of Enoch Huey, was a constructive delivery, and gave the defendant the right to take possession of the deed, and have the title to the land at the time specified. Actual possession by a grantee, is not always necessary to constitute a delivery by the grantor." The latter clause of this instruction is undoubtedly correct, but the previous portion does not, in our judgment, meet all the requirements of the law in relation to the delivery of deeds.

It is quite clear from the testimony, that Enoch Huey executed the conveyance in question, with the purpose of thereby conferring upon his son, at some time, the title to the land described in said deed; and it is equally clear that this was communicated by him to the son, and that the time fixed upon in the mind of the father for so vesting the title, was at or after his own death. Now, it is evident that in order to effectuate this purpose, something more was necessary than the mere execution of the deed, and the lodgment thereof in a place to which the son had access during his life, and from which he could, without hindrance, transfer it to his own possession after his death. Delivery is essential to make a deed effective, and this delivery must be in the lifetime of the grantor. *Jackson v. Leek*, 12 Wend. 107; *Jackson v. Phipps*, 12 Johns. 421. That is, there must be an actual or constructive delivery during the life of the grantor, or a delivery after his death which takes effect by relation at some period during his life. A delivery after the death of the grantor, must of course be made by some person holding the deed as a trustee, or

having the same in possession as an escrow. *Wheelright v. Wheelright*, 2 Mass. 447. The Butler and Baker's case, (3 Rep. 350) may be appropriately cited as illustrating the effect of such a delivery. It was there said: "That to some intent, the second delivery hath relation to the first delivery, and to some not, and yet, in truth, the second delivery hath all its force by the first delivery; and the second is but an execution and consummation of the first; and therefore, in case of necessity, *et ut res magis valeat quam pereat*, it shall have relation by fiction to be his deed *ab initio*, by force of the first delivery; and therefore, if at the time of the first delivery, the lessor be a *femme sole*, and before the second delivery she takes husband; or *if before the second delivery she dies*, in that case if the second delivery should not have relation to this intent, to make it the deed of the lessor *ab initio*, but only from the second delivery, the deed in both cases would be void; and therefore in such case for necessity and *ut res magis valeat*, to this intent by fiction of law it shall be a deed *ab initio*, and yet in truth it was not his deed till the second delivery."

As to the constituent and essential elements of a delivery, as applied to deeds, the authorities are numerous, and in some degree, conflicting. In *Jackson v. Phipps*, 12 Johns. 421, Judge Spencer said: "It is requisite, in every well made deed, that there be a delivery of it. This delivery must be either actual, by doing something and saying nothing, or else verbal, by saying something and doing nothing; or it may be by both; but by one or both of these it must be made; for otherwise, though it be never so well sealed and written, yet is the deed of no force." It is laid down in Greenleaf's Evidence, vol. 2, § 297, that " the delivery of a deed is complete when the grantor or obligor has parted with his dominion over it, with intent that it shall pass to the grantee or obligee; provided, the latter assents to it, either by himself or by his agent." The concluding parapraph in relation to the assent of the grantee, is unimportant in the present case, as we are considering only

what is required on the part of the grantor. Besides, the assent of the grantee is always presumed, where the instrument is beneficial to him.

In the case of *Cook v. Brown*, 34 N. H. 460–476, it was said: "There must be a time when the grantor parts with his dominion over the deed, else it can never have been delivered. So long as it is in the hands of a depositary, subject to be recalled by the grantor at any time, the grantee has no right to it, and can acquire none; and if the grantor dies without parting with his control over the deed, it has not been delivered during his life, and after his decease no one can have the power to deliver it. The depositary must have had such a dominion over the deed during the lifetime of the grantor, as the latter could not interfere with, in order to have any control over it after his decease." These, and other authorities to the same effect, which it is unnecessary to cite, concur in declaring that the only infallible test of a delivery is the fact that the grantor has divested himself of all dominion and control over the conveyance.

In the case of Doe-dem. *Gamons v. Knight*, 5 Barn. & Cress. 671, in an elaborate opinion by Bayley, J., the doctrine was maintained that, where there has been a formal delivery by apt words, it is not essential, in order to make such delivery operative, that the grantor should part with the custody of the conveyance. In the case of *Belden v. Carter*, 4 Day 66, it appeared that A. having signed, sealed and acknowledged a deed, conveying a tract of land to B., took up the deed in the absence of B., and said to C., "take this deed and keep it. If I never call for it, deliver to B. after my death, if I call for it, deliver it up to me." C. took the deed; A. died soon afterwards, having never called for it, and C. delivered it over to B. It was held that this was the deed of A. presently; that C. held it as trustee for B.; that the title became consummate in B. by the death of A., and that the deed took effect by relation from the time of the first delivery.

The diversity of opinion existing upon the point under consideration, is sufficiently presented by the foregoing cases, and it remains to be seen, whether in the present case a delivery of the conveyance in question can be maintained upon the principles announced in any one of them. The facts, it will be seen, are wholly dissimilar. In the present case, no delivery was made by any person pretending to act for the grantor after his death, and a testamentary character could not be given to the conveyance by any declaration made by the grantor, at or after the time of its execution.

Was there any delivery in his life time ? We think it clear from the testimony that Enoch Huey, after executing and acknowledging the conveyance, kept the same in his custody, until the time of his death, notwithstanding the fact that the son had unrestricted access to the place where it was deposited. On the authority of some of the foregoing cases, this would not be inconsistent with a delivery by apt words during his life, or obstruct the operation of such delivery. But there is no evidence of any verbal delivery. He not only retained the deed in his custody, but he never relinquished his right to alter or annul it. The retention of this power over the conveyance is inconsistent with the verbal delivery. He said to one witness that he withheld the delivery, because change of circumstances might make it prudent and desirable to alter the disposition thereby made of his property. After a most careful consideration of the testimony, we find ourselves unable to escape the conclusion that it was the purpose and intent of the father that the son should acquire no rights whatever under the conveyance made to him, until after the father's death. And the statement made to the son by the father that he might have the deed recorded after his death, cannot be construed to be a present verbal delivery, but viewed in connection with other statements made by him, would seem to have been prompted by the supposition that if the deed should remain intact, and be

found among his papers after his death, the son, as grantee therein, would be authorized to have it recorded, and to claim the title to the property therein described. In short, it would seem that the father labored under the impression that he could make this deed perform the office of a will. No construction which can be legitimately placed upon the acts done and the things said by the father, will enable us to give effect to the purpose which he obviously had in view, and the son must abide the consequences of the father's evident want of knowledge of the existing state of the law.

Had the deed been delivered to some third party, with instructions to deliver it after his death, if not previously recalled, there would have been some act in his life to which the delivery by such person after his death could perhaps relate. But there was no such delivery in his lifetime, and there could not, therefore, be any delivery after his death. As the instruction quoted is not in conformity to the views here expressed, and as the facts proved are insufficient to establish a delivery of the deed to the defendant, the judgment which was for the defendant will be reversed and the case remanded. The other judges concur.                                 REVERSED.