Standiford v. Standiford.

---

STANDIFORD *et al.* v. STANDIFORD *et al., Appellants.*

1. **Deed: DELIVERY.** To make a deed effective, there must be a delivery, actual or constructive, to the grantee, or to some person for his use, during the lifetime of the grantor.

2. —— : **WHEN COMPLETE.** The delivery of a deed is complete when the grantor has parted with his dominion over it, with intent that it shall pass to the grantee, provided the latter assents.

3. —— : **DELIVERY : ASSENT OF MINOR.** The assent of a minor child, to whom a deed beneficial to him is made, will always be presumed.

4. —— : ——. When a deed to a minor from his father is absolute in form and for his benefit, and the grantor voluntarily hands the same to a third person, telling him to have it recorded and to keep it safe, and such third person, after the death of the grantor, delivers the deed to the recorder for record, the second delivery has relation to the first, and it is a deed *ab initio.*

5. —— : —— : **CASE ADJUDGED.** The evidence in this case examined and held sufficient to constitute a delivery of the deed in controversy.

*Appeal from Buchanan Circuit Court.*—Hon. J. P. Grubb, Judge.

Reversed.

*Anderson & McCormack, S. C. Woodson* and *Woodson & Woodson* for appellant.

(1) The intention of the grantor was clear and unmistakable in delivering the deed to Dick, the depositary for his infant son. The deed was executed and delivered in pursuance of an often expressed design, formed years before, after the maturest deliberation, and after taking legal counsel as the nature and effect of the deed. The grantor divested himself of all dominion and control over the conveyance, by the delivery to Dick, and died within a year thereafter, all the time supposing and repeatedly avowing that he had fully and beyond recall conveyed the land to his infant son. (2) There may be instances where the conveyance would operate as a deed, even though it was not parted with by the person executing it, so desirous are the courts to give effect to the clear intention of the grantor more especially in cases of voluntary settlements. Martindale on Conv. 173; *Bryan v. Wash*, 2 Gilman, 557; Fonbl. Eq. 307–318; *Newton v. Bealer*, 41 Iowa, 334; *Walker v. Walker*, 42 Ill. 311. (3) It is held that, where a father voluntarily makes a deed to his son, and does not deliver it, but their subsequent conduct was such as to show that both of them considered the deed as having been effectually executed for the purpose of passing title, no delivery was necessary. *Masterson v. Cheek*, 23 Ill. 76; 4 Kent Com. 455; 16 Iowa, 464; *Souverbye v. Arden*, 1 Johns. Ch. 251; *Jaques v. Methodist*, 17 Johns. 548, 577; *Smith v. Moore*, 4 N. J. Eq. 487. (4) Whether a deed has been delivered or not, is a question of intention. It may be effected by

words without act, or by act without words. When the circumstances show, unmistakably, that one party intended to divest himself of title, and to invest the other with it, delivery will be considered complete, though the instrument still remains in the hands of the grantor. *Buckman v. Buckman*, 32 N. J. Eq. 259; *Cannon v. Cannon*, 26 N. J. Eq. 319; *Smith v. Moore*, 4 N. J. Eq. 487; *Woodward v. Woodward*, 8 N. J. Eq. 784; *Crawford v. Berthof*, 1 N. J. Eq. 467; Shep. Touch. 58; *McCoy v. Hill*, 2 Litt. (Ky.) 373; *Burk v. Adams*, 80 Mo. 511, 512. (5) Where the grant is beneficial, and the grantee is an infant, of course acceptance is presumed. *Davenport v. Prewitt*, 9 B. Mon. 99; *Spencer v. Carr*, 45 N. Y. 407; *Ensworth v. King*, 50 Mo. 483; *Brooks v. Marbury*, 11 Whart. 96; *Tompkins v. Wheeler*, 16 Pet. 118; *Grove v. Brien*, 8 How. 429; *Jackson v. Pintard*, 20 Johns. 184. (6) "To constitute a delivery of a deed, by placing it in the hands of a third party, it must be done with the intent, on the part of the grantor, that it should take effect as his deed, in favor of the grantee." *Inlow v. Commonwealth*, 6 Mon. 73; *Hammerslough v. Cheatham*, 84 Mo. 20, 21.

*Doniphan & Reed*, *R. P. C. Wilson* and *J. W. Coburn* for respondents.

(1) The evidence in this case shows that the grantor in the deed in question did not surrender possession of the deed, but retained under his own control and subject to his order. That he finally decided to retain dominion over the land, as he might want it to support himself with before he died. The deed was thus subject to recall. His dominion over the land was still complete and perfect and there was no delivery of the deed. *Huey v. Huey*, 65 Mo. 694; *Hammerslough v. Cheatham*, 84 Mo. 19. Although the law presumes that the delivery of a

deed to the grantee personally is done with the intention of passing the title, there is no such presumption indulged in when the deed is handed to a stranger. To make the delivery to a stranger effectual, the intention with which the delivery is made must be expressed at the time. Tiedeman on Real Prop. sec. 814; *Church v. Gilman*, 15 Wend. 656; *Souverbye v. Arden*, 1 Johns. Ch. 255; *Maynard v. Maynard*, 10 Mass. 456; *Tibbals v. Jacobs*, 31 Conn. 428; *Folk v. Varn*, 9 Rich. Eq. 303; *Mitchell v. Ryan*, 3 Ohio St. 377; *Cecil v. Beaver*, 28 Iowa, 240. (2) The mere execution of a deed of gift which has not been delivered is ineffectual to establish the donee's title. *Martin v. Ramsey*, 5 Humph. (Tenn.) 348; *Payne v. Powell*, 5 Bush [Ky.] 248. If an instrument be signed and sealed by the grantor, but is left with a third person, without any express or implied authority to deliver it to the grantee, it is not presently the deed of the grantor. *Carr v. Hoxie*, 5 Mass. 60; *Baker v. Haswell*, 47 N. H. 479. It must be so held by the third party as to be beyond the control and right of dominion of the grantor. *Hammerslough v. Cheatham*, 84 Mo. 20, 21; *Huey v. Huey*, 65 Mo. 689, 693, 694. (3) So long as the deed is within the control of the grantor and subject to his authority, it cannot be held to be delivered. *Prestman v. Baker*, 30 Wis. 644; *Phillips v. Houston*, 5 Jones, 302; *Deardorff v. Foresman*, 14 Am. Law Reg. 545; *Cook v. Brown*, 34 N. H. 476; *Johnson v. Farley*, 45 N. H. 505; *Brevard v. Neely*, 2 Sneed [Tenn.] 164; *Duer v. James*, 42 Md. 492; *Byars v. Spencer*, 101, Ill. 429; 13 Cent. Law Jour. 222; 14 Cent. Law Jour. 97, 98; *Hammerslough v. Cheatham*, 84 Mo. 13; *Phillips v. Phillips*, 50 Mo. 603. The true question is, has the donor parted with the dominion over the property. 2 Brad. Sur. Rep. 432. (4) Mere subscribing and sealing, accompanied by the ordinary attestation of those acts by the witnesses, followed by the grantor keeping the deed in his own custody, and

his continued possession of the property, are not suffi-
cient to constitute a legal delivery. *Fisher v. Hall*, 41
N. Y. 416; *Little v. Willetts*, 5 5 Barb. 125; 37 How. Pr.
481; *Wiener v. Stephani*, 45 Mo. 565; *Hatch v. Atkin-
son*, 56 Maine, 324; 10 Am. Rep. 313; *Raymond v. Sel-
lick*, 10 Conn. 464; *Grattan v. Appleton*, 3 Story, 755;
*Thompson v. Thompson*, 12 Tex. 327; *Dole v. Lincoln*,
31 Maine, 422; *Spencer v. Vance*, 57 Mo. 427; *Brewer v.
Harvey*, 72 N. C. 176; *Trough's estate*, 75 Pa. St. 115.
(5) The deed must be delivered during the lifetime of
the grantor. A delivery after his death will have no
effect. Tiedeman Real Prop. sec. 812; *Shoenberger v.
Zook*, 34 Penn. St. 24; *Jackson v. Leek*, 12 Wend. 107;
*Jackson v. Phipps*, 12 Johns. 421; *Fisher v. Hall*, 41
N. Y. 423; *Fay v. Richardson*, 7 Pick. 91; *Woodbury
v. Fisher*, 20 Ind. 388; *Wiggins v. Lusk*, 12 Ill. 132;
*Miller v. Physic*, 24 Ark. 244; *Jacobs v. Alexander*, 19
Barb. 243; *Stillwell v. Hubbard*, 20 Wend. 44; *Prest-
man v. Baker*, 30 Wis. 644; *Huey v. Huey*, 65 Mo. 689.

BRACE, J.—On the ninth day of January, 1878,
Dodson Standiford, deceased, being in feeble health,
made a deed to his son, the defendant William Seigel
Standiford, then aged about sixteen years, to a tract of
land containing one hundred and three acres, situated
in Platte county, on which he, with his wife, the plain-
tiff Amanda, and his said son were then residing, in
which his wife did not unite, and delivered it to one
Hezekiah Dick. In the following August, he died, and
within twenty days after his death, the said Dick filed
the deed in the office of the recorder of deeds of said
county and the same was recorded.

At the time the deed was made the other children
of the grantor were grown and had left the homestead.
William S. and his mother continued to reside together
on the premises from the time the deed was made until
the seventeenth of July, 1883, when he sold and con-
veyed his interest in the land to Ephraim B. Worth,

the other defendant herein, for the sum of $2,500, cash.
In September, 1883, this suit was instituted by his
mother, the said Amanda, and the other plaintiffs, who
are the children and descendants of deceased children of
the said Dodson, other than the said William S., in
which they seek to set aside the deed from Dodson to
his son, and the deed from the son to the said Worth, on
the ground: "That the said deed from Dodson Standi-
ford to his son William S. Standiford was a deed of
gift, that said deed was never delivered to the said
William S. Standiford, nor to any one for him; that
said deed was intended to be delivered to the said
William S. Standiford after the death of the said Dodson
Standiford, and to take effect after his death only as a
will, and that the deed was not recorded until after his
said death, of all of which the defendants were at the
time aware."

The controlling question in the case is, was the
deed from the father to the son, in contemplation of law,
delivered in the lifetime of the father? While there is a
conflict of testimony in some particulars between the
several witnesses, interested and otherwise, who testified
in the case, the whole testimony tends to support and
confirm that of Mr. Dick, who became the depositary of
the deed, and who was called as a witness by the plain-
tiffs, and there can be no doubt that his testimony, in
connection with that of Mr. Woodson, another intelli-
gent and disinterested witness called for the defendants,
presents a connected and truthful statement of all the
material facts bearing upon the question.

Mr. Dick testified substantially as follows: "Before
the execution of this deed, I had a conversation with Mr.
Standiford about executing it. It was in February or
March, 1877. He and I were sitting on a log on some
land I purchased from him. The first time he had any
such notion in his head he said: 'I am going to deed
this land I have here to Seigel,' and 'I have been told

by some parties that I can't make a valid deed unless I have other lands left, and I want to know what you think about it.' I said: 'You can't deed the land away at the expense of your creditors, but it doesn't make any difference whether you have any other land left or not; that will not invalidate the deed.' Then he said to me. 'The first time you go to Platte City I want you to consult Steve Woodson; ask him whether I can make a valid deed to this land unless I have any other land or not.' I said: 'It is unnecessary at all, but for your satisfaction I will do so.' Shortly afterwards I got Mr. Woodson's opinion in the matter, and conveyed the same to Mr. Standiford, which was the same as my own opinion, which seemed to satisfy him, and I never heard anything more of it until a day or so before he made the deed, he notified me that he was going to make me a deed, also one to his son, and wanted me to be present. I was there the morning the deed was made; was notified by Mr. Standiford to be there, probably the day before, to be there on that occasion; that he was going to made a deed to me for land I had bought, that he had never deeded to me, and he said: 'I want you to be there on that morning.' Accordingly I went. The deed was made and acknowledged and my recollection is that it was left lying on the table. I staid there some little time. The old man motioned to me, and said: 'Squire, you take that deed, and file it for record.' I, having a motive in view, says to him: 'Uncle D., I don't believe that I would have it filed for record, or put on record at the present time. You may get well and live some time. You are not making much money, and you may have occasion to sell off a 'scrap or something of that kind, or the income from the land, and need it to live on.' He said: 'You take that deed and keep it safely.' Says he, 'there are parties who came about the house, or persons about the house,' I don't recollect which, 'that if they come across it, would

likely make way with it, and I am not able to be up and around ;' and I carried it away, and don't think any one ever saw it after it was given to me. He told me to take it. I don't think it was handed to me by any one. No person ever saw it until about twenty days after his death. I took it to Platte City and filed it for record. He did not tell me that at his death, he wanted the deed filed for record, or anything of that kind, but then that was the impression left upon my mind. It was my impression that the deed was to go on record as soon as he died, and that impression was made from the fact that he first stated to me to record the deed."

S. C. Woodson testified : "Mr. Dick first spoke to me about what Mr. Standiford wanted to do, and some time in the fall or winter of 1877, I was up at Edgerton and saw Mr. Standiford, and he told me that he had an idea that he wanted to give his son William S. the land, and he asked me if he could make a deed to it and convey it in that way, and I told him yes, he could deed the land to his son, but I suggested the propriety of making a will and giving the property to his son after his death. He said no, he wanted to give it to him before his death, and he said there was so much trouble and litigation over the rest that he wanted to give it to him now before his death, that his other children were grown and educated. This conversation was in the fall or winter before the deed was made."

To make a deed effective, there must be a delivery, actual or constructive, to the grantee or to some person for his use during the lifetime of the grantor. *Huey v. Huey*, 65 Mo. 689. Whether a deed has been delivered or not is a mixed question of law and fact, dependent largely upon the intention of the parties. The rule laid down by Greenleaf is that : "The delivery of a deed is complete when the grantor has parted with his dominion over it, with intent that it shall pass to the grantee provided the latter assents." 2 Greenl. on Ev. sec. 297.

The assent of a minor child to whom a deed, beneficial to him, is made, will always be presumed. *Huey v. Huey, supra; Tobin v. Bass*, 85 Mo. 654. This disposes of the proviso, and there is no question in this case that the father intended that the dee d should pass to his son. The application of the remainder of the rule cannot be much assisted by adjudicated cases. Each case must stand on its own peculiar facts. It may be actual or constructive, by word or act, to the grantee directly, or to another for him, and a delivery may sometimes be made without the grantor parting with the custody of the instrument. It is sufficient, if, after the grantor has signed, sealed and acknowledged the deed, he makes some disposition of it from which it clearly appears that he intended that the instrument should take effect as a conveyance and pass the title. *Tobin v. Bass, supra; Burke v. Adams*, 80 Mo. 505; *Conlan v. Grace*, Minn. 30 N. W. Rep. 880.

In *Tobin v. Bass, supra*, it was held "that when a deed to a minor child is absolute in form and beneficial in effect, and the father, the grantor, voluntarily causes the same to be recorded, acceptance by the grantee will be presumed, and such facts constitute, *prima facie*, a delivery, and afford reasonable presumption that the grantor intended to part with the title, and clear proof should be made that a person who, under such circumstances, has executed, acknowledged and caused a deed to be recorded, did not intend to part with his title." The act of the recorder in recording the deed, of course, has no bearing on the question of delivery. It is the delivery of the deed to the recorder for that purpose that is held to be a delivery. In this case, the deed was delivered by the father to Mr. Dick to be recorded, and by him delivered to the recorder, and by him was recorded, and the deed to his minor son being thus caused to be recorded by the father, brings this case directly within the principle of that case.

But it is contended that Mr. Dick did not deliver it

to the re corder until after the death of the father, *ergo* there was no delivery to the son in the lifetime of the father, and the deed is inoperative and void. This would be so but for that maxim of the law, *ut res magis valeat quam pereat*, rather than the deed shall perish the second delivery to the recorder hath relation to the first delivery to Mr. Dick, and it shall be a deed *ab initio.* *Butler and Baker's case*, 3 Rep. 350, cited in *Huey v. Huey, supra.* The application of this principle is thus illustrated in *Belden v. Carter*, 4 Day, 66 : "A. having signed, sealed and acknowledged a deed conveying a tract of land to B., took up the deed in the absence of B. and said to C. 'take this deed and keep it. If I never call for it deliver it to B. after my death, if I call for it deliver it up to me.' C. took the deed ; A. died soon afterward, having never called for it and C. delivered it over to B. It was held that this was the deed of A. presently ; that C. held it as trustee for B. ; that the title became consummate in B. at the death of A. and that the deed took effect by relation from the time of the first delivery."

And in this case, it follows that whether the father delivered the deed to Mr. Dick to be presently recorded, or to be kept safely until his death and then to be filed for record, or to be kept safely until his death and then delivered to his son, unless recalled, the deed having been delivered for record after the death of the father, was, by relation to the first delivery, at least, *prima-facie*, delivered in the lifetime of the father, and con-clusively so delivered, unless the deed was recalled, or unless it clearly appears, from the evidence, that when the father delivered the deed to Dick he did not intend the title to pass.

It is not pretended that there is any evidence that the deed was ever recalled, and the only question is, does the evidence clearly show that the father did not intend to pass the title by the conveyance when he

Standiford v. Standiford.

delivered it? In *Huey v. Huey, supra,* the father, after signing and acknowledging a deed, kept it in his own custody, among his papers to which the son had access, declared that he did not wish, during his life, to deliver the deed to his son; that if his son deviated in his treatment of his mother he might make a change; that he wanted to be the owner as long as he lived; that his son could have it recorded after his death; held that there was no delivery, the son, after the death of the father, having had the deed recorded; it being perfectly clear that the father did not want the deed to operate as a conveyance until after his death, and that he retained the custody of it for that very reason. The circumstances of this case are widely different, almost antithetical. The father here, after having for months considered the matter and consulted with his friends, declares that he wants to convey this land to his son; that he did not want to do so by will, an instrument that could only take effect after his death, but wants to convey it to him now, during his life, takes legal advice as to whether he can do so by deed, having no other land beside. Being satisfied that he can, he executes and acknowledges the deed, selects one of the friends whom he has consulted, and who is cognizant of his wishes in regard to the matter, as the depositary of the deed, delivers him the deed, saying to him: "Squire, you take that deed and file it for record," and when his friend, from motives of his own, suggests that he do not file it for record at present, assigning reasons for the suggestion that he thought might operate upon his mind, his response is: "You take that deed and keep it safely," assigning cogent reasons why, for its safety it should be delivered now, without either adopting the suggestion that the recording should be postponed, or intimating that he had changed his purpose to convey his land to his son then, or that he desired that the deed should be held

subject to his order, or control in any manner whatever thereafter. He insisted that his friend, who also knew he wanted to convey this land to his son by this deed, should take it, and he took it, and we have no hesitation in saying that this was an absolute delivery of the deed to Dick, for the benefit of his son; and that Dick, from that moment, became a trustee thereof for the son, and whenever thereafter he filed it for record, whether before or after the death of the father, he did but consummate the delivery of the father to the son, as of the date of the delivery to him as such trustee. The deed became effective from that date, and operated to vest the title in the defendant, William S. Standiford, and the court should have so held.

The decree for the plaintiff on the evidence was erroneous; the judgment is reversed and the bill dismissed. All concur.