ALLEN *et al.*, *Appellants*, v. DEGROODT *et al.*

DIVISION ONE.

1. **Deed, Delivery of:** LIFETIME OF GRANTOR. A deed, although signed, sealed and acknowledged, must be delivered during the lifetime of the grantor or no title will pass.

2. ———— : ————. An unconditional delivery, however, to a third person will be good, if assented to by the grantee, either before or after the death of the grantor.

3. **Deed :** WILL. A deed cannot be made to perform the functions of a will.

4. ———— : REFERENCE TO WILL. A deed may refer to a will for a more specific statement of the rights of the parties, and the two instruments will then be read together as parts of one transaction.

5. **Tenant for Life :** PURCHASE OF INCUMBRANCE : CONTRIBUTION : EJECTMENT. Where a tenant for life buys in the property at a sale under an outstanding incumbrance upon the estate, it will be regarded as having been done for the benefit of the remainderman as well as for himself, if the latter will contribute his proportion of the sum paid, and, until he so pays his proper share, he will not be permitted to recover in ejectment.

6. **Practice :** OBJECTIONS TO DEED. A deed should be preserved in the record to enable the supreme court to consider objections to its admission in evidence because it does not contain necessary recitals.

7. **Trustee's Deed :** RECITALS AS TO SALE : EVIDENCE ALIUNDE. Although a trustee's deed does not recite that the sale was advertised as directed by the deed of trust under which it was executed, the fact may be proved by evidence *aliunde*.

*Appeal from Pike Circuit Court.* — HON. E. M. HUGHES, Judge.

AFFIRMED.

*William G. Hammond, Frank, Dawson & Garvin* and *John W. Matson* for appellants.

(1) Though a deed only takes effect from its delivery, the possession of the deed by the grantee is

presumptive evidence of delivery. *Green v. Yarnall,* 6 Mo. 326. It is well settled that a delivery of a deed to a stranger for the use of the grantee is a good delivery. *Carter v. Mills,* 30 Mo. 439. The rule in Missouri is that delivery of a deed will be presumed as of the date of the acknowledgment. *Fountaine v. Savings Inst.,* 57 Mo. 561. It is not necessary to the delivery of a deed that it should be actually handed to the grantee, or to any other person for him. *Burke v. Adams,* 80 Mo. 511. See, also, *Kane v. McCoun,* 55 Mo. 181; *Pearce v. Danforth,* 13 Mo. 364; *Rogers v. Carey,* 47 Mo. 234; *City, etc., v. Ferry Co.,* 88 Mo. 617. Proof of the execution of a deed added to its being in the possession of the grantee is *prima facie* evidence that it was sealed and delivered. *Sadler v. Anderson,* 17 Tex. 245; *Rhine v. Robinson,* 27 Pa. St. 30; *Houston v. Stanton,* 11 Ala. 412; *Secard v. Davis,* 6 Pet. 124; *Black v. Thornton,* 30 Ga. 361. And the execution of a deed in the presence of witnesses is evidence from which a delivery may be inferred. *Howe v. Howe,* 99 Mass. 98; *Moore v. Hazelton,* 9 Allen, 102; *Doe v. Knight,* 5 Barn. & Cres. 671; *Hope v. Harmen,* 16 Q. B. 751; *Bunn v. Winthrop,* 1 Johns. Ch. 329; *Scrugham v. Wood,* 15 Wend. 545; *St. Louis v. Ferry Co.,* 88 Mo. 615. (2) The established doctrine is that a tenant for life in possession in the purchase of an incumbrance upon the estate is regarded as having made the purchase for the joint benefit of himself and the remainderman or reversioner, and cannot hold it for his own exclusive benefit. *Allen v. DeGroodt,* 98 Mo. 159; *Daviess v. Myers,* 13 B. Monroe, 573; *Holdridge v. Gillespie,* 2 Johns. Chan. 33, 34; 1 Washburn, Real Prop. 96; *Whitney v. Salter,* 36 Minn. 103. (3) It is a universal principle that one who ought to discharge a lien or incumbrance on property cannot, by omitting to do so, purchase at a sale of the property for the non-payment of the lien debt, and thereby strengthen his title. A purchase by one whose duty it was to pay the debt

operates as a payment only, and the McQuie deed to Marshall S. Allen only operated as a release of the mortgage. *Gwynn v. McCauley*, 32 Ark. 97; *Jacks v. Dyer*, 31 Ark. 334; *Fallon v. Chidester*, 46 Iowa, 588; *Weare v. Van Meter*, 42 Iowa, 128; *Bertram v. Cook*, 32 Mich. 518. (4) The defendants, having expressly disclaimed at the trial title under the McQuie deed, are estopped to make any such claim in this court.

*D. A. Ball, T. J. C. Fagg* and *R. L. Pearson* for respondents.

(1) There was no delivery of the Betty Parry deed. The evidence shows she did not intend to part with the control of it during her life, and this being the case there was no such delivery as the law contemplates. *Huey v. Huey*, 65 Mo. 689; *Scott v. Scott*, 95 Mo. 300; *Hammerslough v. Cheatham*, 84 Mo. 13; *Miller v. Lulman*, 81 Mo. 311. (2) John E. Allen and wife had a life-estate in the property, and the possession remained in them until the sale under the McCune deed of trust. (3) Marshall S. Allen did not occupy such a position at the time of the sale as to prohibit him from purchasing in his own right. Taking possession and control of the property as he did after paying the money at the sale, his position would still be that of the mortgagee in possession after condition broken. These are fundamental principles underlying this whole case. As to the general principle that a trustee may purchase the trust property at a judicial sale brought about by a third party, which he had no part in procuring, and over which he could not have had control, is upheld by numerous decisions of this court and other courts of the country. *Allin v. Gillett*, 127 U. S. 589; *Oil Co. v. Marbury*, 91 U. S. 587; *Provost v. Gratz*, 1 Pet. C. C. 364; *Fish v. Sarber*, Watts & Serg. 18; *Scott v. Mann*, 33 Texas, 725. (4) Unless there is a clear case shown by the record to prove that

the finding of the jury was the result of mistake, prejudice or corruption, this court will not interfere with the action of the trial court, in refusing to set aside the verdict and grant a new trial. *Doering v. Slaum*, 56 Mo. 479; *Ackley v. Staehlin*, 56 Mo. 558; *Hearne v. Keath*, 63 Mo. 84; *Rea v. Ferguson*, 72 Mo. 225.

BLACK, J.—This is an action of ejectment to recover four lots in Marshall S. Allen's fifth addition to the city of Louisiana. On the first trial there was a judgment for defendants, which was reversed by this court. 98 Mo. 159. There was a like result on the second trial, and the plaintiffs again appealed.

The plaintiffs put in evidence a deed from Betty Parry, dated the eighth of October, 1845, conveying to Marshall S. Allen one hundred and seventy acres of land for life, remainder to his children. This deed also makes provisions, hereafter mentioned, for John E. Allen and his wife during their lives. Plaintiffs also read in evidence the will of Betty Parry, bearing the same date as the deed. She died in a few days after the date of these instruments, and the deed was recorded, and the will probated at the same time, on the fifteenth of October, 1845. The wife of John E. Allen died some eight years after the last-mentioned date, and he died a few years later; the exact date is not given. Marshall S. Allen died in 1881, and the plaintiffs are his children. They commenced this suit in 1884.

The defendants put in evidence a deed of trust, dated the fifteenth of May, 1843, from Betty Parry, conveying the land to Edward G. McQuie, in trust to secure her notes for $1,270, payable to John S. McCune. The debts were past due at the date of the deed to Marshall S. Allen. The trustee sold the premises, under the deed of trust, on the eleventh of February, 1850, and Marshall S. Allen became the purchaser, at the price of $1,499, which was the full value of the land. The four lots in question were sold by the sheriff, on the ninth of March,

1880, under a judgment of the circuit court for delinquent taxes against Marshall S. Allen, and Hawkins became the purchaser. Hawkins conveyed to Hart, and Hart to defendant DeGroodt.

A question of fact made on the last trial was whether there was ever any delivery of the deed from Betty Parry to Marshall S. Allen, the defendants taking the position that that deed was never delivered to, or accepted by, him. This issue the jury found for defendants. The claim of plaintiffs is that the court should have ruled, as a matter of law, that the deed was duly delivered and accepted; that Marshall S. Allen was a life-tenant, and it was his duty to pay off the McCune mortgage, and that his purchase at the trustee's sale operated only as a payment of that debt.

At the date of the deed from Betty Parry to Marshall S. Allen, she and her son-in-law, John E. Allen, and his wife, and Marshall S. Allen and his wife all lived together on the premises described in the deed. The deed conveys the premises to Marshall S. Allen, in consideration of love and affection. John E. Allen is not named in the granting clause, but, after describing the land, the deed says: "To have and to hold the said granted and bargained premises, with all and singular the rights, privileges and advantages thereof, to him, the said Marshall S. Allen, and his heirs forever, upon the following terms and conditions, nevertheless; that is to say, he is not to come in full possession of the land during the natural life of his father, John E. Allen, and also the natural life of his mother, Parmelia Allen, but is to reside with them at the home farm, and carry on the farm in company with his father, John E. Allen, to the best advantage of himself and the estate I leave behind me, taking, as a compensation for his services and trouble, one-third of all the products of the farm, whether of grain or increase of stock of all kinds, according to the conditions and terms I have specified and

Allen v. DeGroodt.

laid down in my last will and testament, and also conditioned that, immediately after the death of his father and mother, he is to have, use, occupy and enjoy the premises, and all the rents and profits thereof, during his natural life, with reversion thereafter to the lawful heirs and legal representatives of said Marshall S. Allen, so that said Marshall S. Allen shall not have it in his power during his lifetime to bargain, sell or mortgage, or in anywise alien or incumber said premises, and provided also, that the said granted and bargained premises shall in nowise be subject to any debt or debts, contracts or engagements, whatever of the said Marshall S. Allen now existing, nor any that said Marshall S. Allen shall or may hereafter enter into. The true intent and meaning of this conveyance being the said tracts of land comprising my home farm shall always remain an unincumbered home and possession for the said Marshall S. Allen during his lifetime, and to revert, unincumbered, to his heirs and legal representatives." The deed concludes: "Signed, sealed and executed in the presence of us. E. M. Bartlett, Joseph Richardson, Edwin Draper."

The will, among other things, contains the following provisions: John E. Allen and his wife are to reside on the "home farm," and carry on business as usual, to facilitate the payment of the debts, and Marshall S. Allen is to be joined with him to carry on the farm to the best advantage. When speaking of Marshall S. Allen, it is provided: "After the provisions are taken out of the crop, for the support of the two families and the blacks as servants that may be engaged at work on the farm, he shall receive, as full compensation for his services, one-third of all that is raised on the farm, and the other two-thirds shall be applied towards paying off my debts, until they are all fully paid off, except so much of it as may be necessary to be used in the support of John E. Allen and his wife, whilst they are thus engaged in providing means to pay off my debts and

settle up my business; and it is also my will that Marshall S. Allen shall also receive one-third of the increase of all the stock that is raised on the farm, after deducting out of the whole increase of all the stock what is necessary for the support of the two families and the servants employed at work on and in carrying on the farm."

John E. Allen is directed to build a kitchen for the colored servants and a comfortable house for himself on the "home farm" to reside in during his life. The will makes no other disposition of the "home farm," though there is a residuary clause. The witnesses are the same as to the deed, and the will is acknowledged as if it were a deed.

Mr. Draper, one of the attesting witnesses, was appointed administrator with the will annexed, and he inventoried the home farm, but with the statement that it had been conveyed to Marshall S. Allen.

Joseph Richardson testified: "I remember this deed; I took Betty Parry's acknowledgment to it. It was written by John E. Allen, who came after me to take her acknowledgment. After I took the acknowledgment I gave the deed to Betty Parry. John E. Allen was in the room. I do not remember that M. S. Allen was there. John E. Allen was acting as general agent for Betty Parry. I remember coming to Bowling Green to probate the will of Betty Parry. John E. Allen had Betty Parry's papers in his possession, and, when Betty Parry's papers were opened there in Bowling Green by him, this Betty Parry deed was amongst them, and he took it across the hall into the recorder's office and had it recorded. I remember coming to Bowling Green to probate the will. Bartlett, Draper and John E. Allen were along. Allen had Betty Parry's papers in his possession, and when they were opened by him the deed was among them, and he took it across the hall and had it recorded. I did not see the papers when they were first opened at Bowling

Green. Don't know whether the deed and will were in the same package. When I first saw them they were lying on the table in the probate office."

Other evidence is to the following effect: Marshall S. Allen and his father carried on the farm after the death of Betty Parry the same as before, until after the sale under the McCune deed of trust. In 1849 he talked of going to California, and said he could not pay off that mortgage, but he borrowed the money of McQuie and purchased the property. Two or three months after his purchase at the trustee's sale he conveyed twenty-four acres to McQuie for the consideration of $245. He then laid the residue of the land off into lots, sold some, and, in 1870, moved to another county where he died.

One of the plaintiffs testified that he found the Betty Parry deed and the trustee's deed among the papers of Marshall S. Allen, in the possession of his widow, tied up in a bundle.

1. Although a deed is signed, sealed and acknowledged, it must be delivered during the life of the grantor, and, if this is not done, it passes nothing. *Green v. Yarnall*, 6 Mo. 326; *Huey v. Huey*, 65 Mo. 689. But an unconditional delivery to a third person will be good, if assented to by the grantee either before or after the death of the grantor. *Rogers v. Carey*, 47 Mo. 232; *Sneathen v. Sneathen*, 104 Mo. 201, and cases cited.

If there was any delivery of the deed in question it must have been to John E. or Marshall S. Allen prior to the death of Betty Parry. To constitute such a delivery she must have yielded up all control over the deed during her lifetime, intending it to take effect at once as a conveyance. If she retained the deed, intending it to take effect with the will, after her death, then there was no delivery, and it was worthless as a deed; for as said in the case last cited a deed cannot be made to perform the functions of a will. John E. Allen had

an interest in the property, reserved to him by the deed, and a delivery to him would be good. While as said in *Rogers v. Carey, supra,* a person will not be held to have accepted a deed against his consent, still acceptance will be presumed from his possession of the deed, until the contrary is made to appear. *Scott v. Scott,* 95 Mo. 300.

John E. Allen took an interest under the deed, and immediately after the death of the grantor he placed it upon record. It was found among the papers of Marshall S. Allen in after years. These are facts which of themselves raise a presumption of a due delivery. But this is not all. While it is clear that Marshall S. Allen claimed the property as his absolute property from and after 1850 under his purchase at the trustee's sale, still he and his father remained in the possession of it from 1845 to 1850. They resided together, and the death of Mrs. Parry brought about a new order of things, including an administration upon her estate, and Marshall must have known of the existence of the deed and of the fact that it had been recorded. There is not a word of evidence showing that he, ever repudiated the deed, or made any disclaimer. His possession of the deed, and his possession of the land for five years, though joint with his father, raise a strong presumption that the deed was not only delivered but accepted by him. Some significance must be given to unexplained acts.

To overcome this presumption we have first the evidence of Mr. Richardson. He does not know whether Marshall was present when the deed was signed and acknowledged or not. He took the acknowledgment and handed the deed back to Betty Parry, and that is all he can say as to what occurred at her house. He is not able to relate what was said by her or anyone else. He knows that John E. Allen had the deed and will when the will was admitted to probate, and that Allen then recorded the deed, and that is the substance of all

he can remember.    Every fact which he discloses is per-
fectly consistent with the proposition that the deed had
been duly delivered.    It is difficult to find anything in
all his evidence which has any tendency by itself to
overthrow the presumption of a delivery and acceptance.

It is true the deed and the will were executed on
the same day, and were made matter of record on the
same day, but these circumstances are of little or no
weight.    The deed does refer to the will for a more spe-
cific statement of some of the rights of the parties, and
hence the two instruments must be read together as
parts of one transaction.    From this it is argued that
Betty Parry intended the deed and will to take effect
only after her death.

Now assuming that the deed was delivered in the
lifetime of the grantor, then it would take effect as a
transfer of the title, though it made reference to her will
for some of its provisions.    The reference would be like
a reference to any other paper, and the fact that the will
could not become operative until after the death of the
testator would not  postpone the vestiture of title under
the deed.    *Amos v. Amos*, 117 Ind. 19.    The reference to
the will for some of the provisions of the deed may be
sufficient to raise a suspicion that it was to take effect
only after the death of Betty Parry ; but it is not
enough to overcome the presumption of delivery arising
from the possession of the deed and of the land by the
grantees.    On the evidence as it appears in the record
now before us the court erred in submitting the question
of delivery and acceptance of the deed to the jury.    To
hold otherwise is to put our land titles on a very uncer-
tain foundation.

2.    For all the purposes of disposing of the case
now before us it must be assumed that the deed from
Betty Parry to Marshall S. Allen of date the eighth of
October, 1845, giving to him a life-estate, remainder to
the plaintiffs, was duly delivered to and accepted by
Marshall S. Allen.    He purchased the property in 1850

under the deed of trust executed by Betty Parry in 1843. The question is whether that purchase and possession thereunder by Marshall S. Allen and his grantees from 1850 to the commencement of this suit in 1884 constitutes a defense in this action of ejectment, the answer being a general denial only.

It is a general rule that a tenant in common cannot purchase an outstanding title or incumbrance on the common property, and then set it up as against his cotenants. Such a purchase will be deemed to have been made for all, if they shall consent to pay their proper share. *Jones v. Stanton*, 11 Mo. 433 ; *Barnes v. Boardman*, 9 Lawyer's Reports ( Annotated ), 571, and notes. And these rules apply as between a tenant for life in possession and a remainderman, so that a purchase of an incumbrance on the common property by a tenant for life in possession will be deemed to have been made for the benefit of himself and those in remainder, if the remaindermen see fit to pay their share. *Holridge v. Goodale*, 2 John. Ch. Rep. 29 ; *Whitney v. Slater*, 36 Minn. 105 ; *Daviess v. Myers*, 10 B. Mon. 394 ; 1 Wash. Real Prop. [5 Ed.] 129 ; *Bowling's Heirs v. Dobyn's Adm'r*, 5 Dana, 446.

But the purchase of an outstanding title or incumbrance by a cotenant is not void ( Freeman, Cotenancy & Part., sec. 156 ), and Washburn says "If a tenant for life purchase in an outstanding incumbrance upon the estate it is regarded as having been done for the benefit of the reversioner as well as himself, if the latter will contribute his proportion of the sum paid therefor."

It is, therefore, clear that when Marshall S. Allen purchased the property at the trustee's sale he obtained the full title, but he held it subject to the right of the remaindermen to come in and obtain the benefit of the purchase by contributing their share of the purchase price. Thus far the plaintiffs have never signified their desire to redeem, and this probably for the reason that for many years the incumbrance equaled, if not exceeded,

the value of the land. The life-tenant and those claim-
ing under him are in possession, and it is just and
equitable that the remaindermen should redeem by pay-
ing their proper share of the incumbrance before they
are allowed to recover in ejectment.

But the plaintiffs say it was the duty of Marshall
S. Allen not simply to keep down the interest, but to
pay off the mortgage debt, and, therefore, his purchase
simply operated as a payment of the debt. They liken
his position to that of a life-tenant who purchases the
property at a tax sale, the taxes having accrued during
the existence of the life-estate.

Was it the duty of Marshall S. Allen to pay off the
mortgage debt? If so, that duty arose from the terms
of the deed and will. Now, while the deed conveys the
land to Marshall S. Allen, remainder to his children, it
does not even give to him full and complete possession.
He is not to have full possession during the life of his
father and mother. They are all to reside upon and
carry on the farm. For Marshall S. Allen's services he
is to have one-third of all the products of the farm,
whether of grain or increase of stock, according to the
terms and conditions of the will. The will provides
that the products of the farm shall be applied as fol-
lows : *First*, to the support of the two families and
the servants ; *second*, Marshall is to have one-third of
the residue ; *third*, the other two-thirds are to be
applied to the payment of the debts, and John E. Allen
is made the manager of the farm during his life. It
was during his life that the land was sold under the
deed of trust. It is plain to be seen that Marshall was
not required to pay off this mortgage debt; for he is
given a specific interest in the products of the farm
independent of any debts. The two-thirds of the reve-
nues of the farm, after the support of the two families,
is the fund which the testatrix created for the payment
of the debts, and that fund proved to be wholly inade-
quate. She was insolvent, and the farm was of little

productive value, and hence the elaborate scheme of the will proved a failure. Marshall was no more responsible for this failure than the plaintiffs. It follows from what has been said, that on the undisputed facts the plaintiffs cannot recover in this action of ejectment. Whether they can at this late day redeem, is a question as to which we express no opinion whatever; for that question is not before us for consideration.

3. It is next objected that the court erred in admitting in evidence the trustee's deed to Marshall S. Allen, because it did not show that the trustee had complied with the terms of the deed of trust, which gave authority to sell at public sale, the trustee first giving sixty days' notice of the time and place of sale by advertisement in some newspaper published in the county. The trustee's deed is not in the record, and we do not know what its recitals are. The fact that plaintiffs made the objection, which was overruled, does not prove or show that the grounds of objection were true in point of fact. The objection may have been overruled because the deed did contain the proper recitals.

But it is insisted that the defendants cannot be heard to say that the deed is a good and sufficient conveyance, because they stated that it was offered for the purpose only of showing color of title. According to the record the defendants did make such a statement when the deed was offered and the objection overruled. But in the subsequent progress of the trial the defendants produced evidence tending to show that the trustee advertised the property for sale, and sold it in accordance with the terms of the deed of trust.

If the deed did not contain the proper recitals it was competent to show *aliunde* that the property was duly advertised and sold in compliance with the terms of the deed of trust. Such evidence was not only offered by the defendants, but this very question was submitted to the jury by instructions given at the instance and request of the plaintiffs, and the jury must have found

that the trustee did duly advertise the property for sale, and sold it in exact conformity to the terms of the power specified in the deed of trust. The question as to the validity of the trustee's deed was in the end made an issue, and that issue was found against the plaintiffs on sufficient evidence, and that finding sets the matter at rest so far as this case is concerned. On the record now before us the judgment should be, and is, affirmed. All concur; BARCLAY, J., in the second and third paragraphs only.

### SEPARATE OPINION.

BARCLAY, J.—Concurring in the reasons assigned for the affirmance of the judgment, in the second and third paragraphs of the foregoing opinion, it does not seem necessary to express my views of the other features of the case.