WHITE *et al.*, *Appellants*, v. POLLOCK.

Division One, July 3, 1893.

:Deed, Delivery of. A grantor in the presence of his son D. handed to
his wife a deed for land worth about $7,500, saying "Here is D.'s
deed. I want you to take it and take care of it for him." D. also
expressed his willingness to accept the conveyance. *Held*, that the
wife having taken possession of the deed, there was a valid delivery,
though she did not give it to the grantee until after the grantor's
death. (*Sneathen v. Sneathen*, 104 Mo. 209, followed.)

*Appeal from Dunklin Circuit Court.*—HON. JOHN G.
WEAR, Judge.

AFFIRMED.

*Phillips & Walker* for appellants.

(1) The court erred in refusing to give the declara-
tions of law asked by plaintiffs. *Huey v. Huey*, 65 Mo.
687; *Scott v. Scott*, 95 Mo. 300; *Standiford v. Standiford*,
97 Mo. 231: *Hall v. Hall*, 107 Mo. 101; *Crowder v.
Searcy*, 103 Mo. 97; *Sneathen v. Sneathen*, 104 Mo. 201.
(2) The court erred in giving the declaration of law
asked by the defendant. See cases *supra*. (3) The
court erred in admitting incompetent testimony upon a
material point, to-wit: *First*. L. D. C. Pollock's testi-
mony as to the condition of the deed when he filed it
for record. *Chapman v. Dougherty*, 87 Mo. 617; *Meier v.
Thieman*, 90 Mo. 433; *Bank v. Hunt*, 25 Mo. App. 170;
*Thieman v. Meier*, 25 Mo. App. 306. *Second*. In
admitting the deed from Jonathan Pollock to L. D. C.
Pollock into evidence when its delivery was not proven.
See cases quoted under first assignment. *Third*. In
admitting the certified copy of the deed into testimony
for the purpose offered. The record of the deed, being

an official act, was the better evidence of the condition of the deed when offered for record. The testimony of witnesses Sexton and Saunders was not positive, until this copy was produced to them. (4) The court erred in refusing to admit competent and material testimony for plaintiffs, to-wit, that there had been no advancements made to plaintiffs by their ancestor, Jonathan Pollock. (5) The verdict was contrary to the evidence.

*Wilson Cramer* for respondent.

(1) After executing and acknowledging the deed the grantor called to his wife and said: "Here is Dannie's deed; I want you to take it and take care of it for him." This is good delivery, the wife being a competent third person to receive a deed for the grantee. *Sneathen v. Sneathen*, 104 Mo. 201. (2) There is no evidence that Jonathan Pollock, after delivering the deed to his wife, ever had possession of it, or even knew where it was. He could neither read nor write, and it seems his wife was the custodian of his papers. Dannie's deed was not with these papers, however, as shown by the testimony of plaintiff, John Pollock. (3) But even if this deed had been with his papers, it would have made no difference. (4) The subsequent conduct of the parties may determine the question of delivery. *Scott v. Scott*, 95 Mo. 300. (5) Tested by all of the rules laid down by the latest adjudications of this court on the subject, which are cited for the convenience of the court, the delivery of the deed from Jonathan Pollock to defendant was complete. *Hall v. Hall*, 107 Mo. 101; *Tyler v. Hall*, 106 Mo. 313; *Allen v. DeGroodt*, 105 Mo. 442; *Sneathen v. Sneathen*, 104 Mo. 201; *Crowder v. Searcy*, 103 Mo. 97; *Ebersole v. Rankin*, 102 Mo. 488; *Standiford v. Standiford*, 97 Mo. 231; *Scott v. Scott*, 95 Mo. 300.

MACFARLANE, J.—This suit is ejectment. Plaintiffs claim title as heirs of Jonathan Pollock, deceased, and defendant claims under a deed from the said Pollock in his lifetime, conveying to him the land in dispute. Plaintiffs are the children and grandchildren of Jonathan Pollock by a first marriage, and defendant is an only child from a second marriage. On the fourteenth of May, 1884, said deceased executed and acknowledged a deed in due form, which purported to convey to defendant the land in suit. The question hinges on the delivery of the deed. The evidence shows that at the date of the deed defendant was twenty-one or twenty-two years of age and lived with his parents on a portion of this land which at that time was worth about $7,500.

Defendant's father, at that time, was near eighty years of age, though so far as appeared was in good physical and mental condition. He also owned personal property valued at something over $2,000. His children had all left him except defendant. The evidence, detailed by a number of witnesses, and which was undisputed, was to the effect, that in conversations prior to the date of the deed, Jonathan Pollock had stated that he intended this land for his son Dannie, as he called defendant. That Dannie was to take care of him while he lived and he would give him the land. The deed was written by, and the acknowledgement taken before, a notary, J. Q. A. Gardner, who, except defendant and his parents, was the only person present when the transaction took place. He testified: "I went to his house to prepare a deed, this deed, and he told me why he wanted to make a deed; said he was getting old; probably he might live to an old age, and be helpless, and he wanted somebody he could rely upon to see to him if he should become

so he needed assistance, and that Dannie (he referred to defendant L. D. C. Pollock) was the only one left of his children that was likely to stay with him and that he wanted to deed him his real estate so that there would be nothing hereafter about it; wanted to get it all so arranged that there would be no trouble hereafter; I then prepared the deed, and while I was preparing he was talking about his business; he said he had assisted his older children, and he thought it would be nothing but right for Dannie to have the land, for he knew, however long he lived, Dannie would take care of him; that his other children would have about equal share with him in all probability; said he had considerable amount of other property, and that they would all share in that equally; the other property referred to was personal property.

"*Q.* Do you remember he called his wife in, and said, 'Here is Dannie's deed, take care of it?' *A.* She was in the room, and he told her he wanted her to take care of that deed for Dannie; * * * they were having a conversation about dower; he told her to take care of Dannie's deed for him; Dannie also remarked that he wanted his mother to take care of it for him; * * * question came up about her signing the deed, and her dower; she said she didn't want to sign her dower away, for Dannie might die before she did, and she would be cut out of her home; that Dannie would take care of her as long as she lived; that it was not necessary to sign her dower away; and she didn't; * * * they asked me about recording,—the old man and his wife both,—if it would be necessary to have the deed recorded right away; I told them I didn't think it would be necessary."

On cross-examination he was asked: "When you finished the deed, and handed it to him, what did he say? *A.* He called to his wife, and said: 'Here is

Dannie's deed.  I want you to take it, and take care of it for him.'"

After the date of the deed, defendant took control of the land, living on it with his parents, working part and renting part.  The deed was kept in an old satchel in which other papers belonging to the said Jonathan Pollock were kept, but they were all in the custody of his wife, he being unable to read.

Jonathan Pollock died in April, 1888, and his wife in three or four days thereafter.  Nothing in his conduct from the date of the deed to his death was inconsistent with the due delivery of the deed.  The evidence tended to prove that a day or two previous to the death of Mrs. Pollock, she told the wife of defendant to get the deed out of the satchel and give it to him.  At any rate the deed was taken from the satchel a few days after the death of Jonathan Pollock and was filed for record by defendant.

Some evidence was offered by plaintiffs to impeach that given by Gardner.  An insurance policy on the house, made subsequent to the deed and existing at the death of Jonathan Pollock, was in his name.  After the date of the deed a tract of the land was sold for $350, of which $100 cash was paid to the father and a note for the remainder was made payable to defendant.  The title bond was signed by both, because, as was said, there was no deed on record.  Evidence was also offered by plaintiff, which tended to prove that at one time (date not known) Jonathan Pollock had threatened to disinherit one of his heirs, if a certain course of conduct was pursued, and that some of the heirs had received no advancements.  This evidence was excluded by the court.

The court sat as a jury and gave the following declaration of law:  "If it shall appear and be found from the evidence in this cause that Jonathan Pollock,

after signing and acknowledging the deed from himself to the defendant, called to his wife and said to her, 'Here is Dannie's deed, I want you to take it and take care of it for him,' and that in compliance with such request the wife of Pollock took charge and control of said deed at the time, then there was a delivery, and the title of Jonathan Pollock passed, by virtue of such deed, to the defendant."

This instruction sufficiently points out the theory by which the court was governed. The finding and judgment of the court was for the defendant, and plaintiffs appealed.

The law in a case, the facts of which are analogous to this one in most of its features, was thus expressed by BLACK, J., in the recent case of *Sneathen v. Sneathen*, 104 Mo. 209: "Delivery of a deed is, of course, an essential element of a valid transfer of title to real estate, and if must take place during the life of the grantor; for a deed cannot be made to perform the functions of a will. But the delivery need not be to the grantee in person. A deed delivered by the grantor to a third person to be delivered to the grantee, and by such third person delivered to the grantee, will constitute a good delivery, though the grantor is dead at the date of the last delivery; for the delivery takes effect by relation as of the date when first made to the third person. In such cases it should appear that the grantor parted with all dominion and control over the instrument, intending it to take effect and pass title as a present transfer. This intention may be manifested by acts, or by words, or by both words and acts." Citing *Burke v. Adams*, 80 Mo. 506; *Standiford v. Standiford*, 97 Mo. 231; Tiedeman on Real Property, sec. 814.

It is also said in the same case: "It is true that Mrs. Sneathen placed the deed in a trunk with the

grantor's other papers, where he could repossess himself of them if he desired to do so. . But the rule that the grantor must part with all dominion and control over the deed, does not mean that he must put it out of his physical power to procure possession of it. It is sufficient that the deed is delivered to the third person for the grantee without reservation, and with the intention that it shall take effect, and from that time operate as a transfer of the title."

It is said further: "No suggestion is made, nor do we see any reason why the wife of the grantor may not be the third person, within the rules before stated, to whom the deed is delivered for the grantees."

These excerpts express the law which governs this case, and are supported by numerous other late decisions of this court. *Scott v. Scott*, 95 Mo. 300; *Standiford v. Standiford*, 97 Mo. 239; *Crowder v. Searcy*, 103 Mo. 117; *Tyler v. Hall*, 106 Mo. 313; *Hall v. Hall*, 107 Mo. 101; *Allen v. DeGroodt*, 105 Mo. 449.

There is no question in this case in respect to the acceptance of the deed by defendant. He was present when it was executed, and he then expressed a willingness to accept it; he also, after the death of the grantor, received and filed it for record.

It will be seen, from the declaration of law given, that the court omitted to require, as essential to the validity of the conveyance, that the "grantor parted with all dominion and control over the instrument, intending it to take effect, and pass the title as a present transfer." Doubtless, the court construed the language of the grantor to his wife, "Here is Dannie's deed, I want you to take it and take care of it for him," if found to have been used, as being conclusive of an intention to part with his dominion and control over it, and to pass the title to the land as a present transfer. The court necessarily found that this lan-

guage was used, and an examination of the evidence of what was said and done on this occasion, discloses nothing which qualifies this language or was inconsistent with it. The use of this language, and the acceptance of the deed by the wife, in the presence of the grantee, and with his consent, constituted all the evidence bearing upon the question of the delivery; and its legal effect was a question of law for the court, none of these facts being controverted.

The grantor spoke of the instrument as "Dannie's deed," and directed that care be taken of it "for him." Defendant was present and assented both to the deed and to his mother's custody of it. The deed was thereupon taken into the possession of the mother to "take care of" for her son. The intention of the grantor is the fact to be established. "This intention may be manifested by acts, or by words, or by both words and acts." *Sneathen case, supra; Crowder v. Searcy, supra.*

We do not see what language or acts could have been used by this grantor more expressive of his intention to part with all control of the deed, and to effect a present transfer of the title than those used by him. There being no qualifying facts, if the language and acts attributed to the grantor were used, then a complete delivery was effected, and the title passed to defendant. In view of the undisputed evidence of the intention of the grantor, there was no error in giving the instruction.

No fraud or undue influence in the execution of this deed was charged or proved, and the case was fairly tried on correct principles of law, and the judgment is affirmed. All concur.